## WEST PRODUCTION CO. v. KAHANEK.

### No. 2925.

Court of Civil Appeals of Texas. Beaumont.

April 28, 1936.

Rehearing Denied May 6, 1936.

Stewarts, Noble Carl, and Byron Economidy, all of Galveston, for appellant.

H. W. Flagg, of Galveston, for appellee.

WALKER, Chief Justice.

This suit was instituted by appellant, West Production Company, against appellee, Bertha Kahanek, a feme sole, and Paul Koppeck, as an action in trespass to try title to recover 80 acres of land in Galves-

ton county, described as "being the land conveyed to J. W. Quinn by Mrs. Louise Hoppe by deed dated the 30th day of June, 1919, of record Vol. 315, page 675, Deed Records of Galveston county." Koppeck• was dismissed on his disclaimer. Appellee's only claim to the land was under her plea of ten-year limitation, submitted to the jury by the following question, "Special Issue No. 1: Do you find from a preponderance of the evidence that defendant, Bertha Kahanek, had been in peaceable, adverse and continuous possession of the land in controversy, using the same as a pasture for grazing purposes for a period of ten consecutive years or more after the fall of 1922 and prior to the filing of this suit on November 22, 1934?" to which the jury gave an affirmative answer. From the judgment rendered in favor of appellee against appellant for the land in controversy, this appeal was prosecuted to the Galveston Court of Civil Appeals and transferred to this court by orders of the Supreme Court.

Appellant attacks the verdict of the jury by the following propositions: (a) In taking• possession of the land in controversy appellee· was in privity with P. J. Willis, an agent of appellant's remote grantor, and there was no evidence that she brought home to appellant and its grantors knowledge of the fact that she was holding the land adversely, (b) therefore, appellee's possession, as a matter of law, "could not be adverse"; (c) to constitute adverse possession there must be "a visible, distinct and notorious possession of the land," and (d) since the evidence was not sufficient to raise that issue in favor of appellee, verdict should have been instructed in favor of appellant.

From the evidence, we make the following fact conclusions: First, the land in controversy is about 400 varas north of, and on the east side of a county road from, a tract of 38.86 acres of land devised to appellee by P. J. Willis, and which she took possession of and has used as her home since November 1, 1912. The county road is the west boundary line of the land in controversy and the east boundary line of appellee's home place. The Belzere tract of 83 acres lies immediately south of the land in controversy, its east boundary line is an extension south of the east boundary line of the land in controversy, and its west boundary line is an extension south of the west boundary line of the land in contro-

versy. The Ott tract of 55 acres lies immediately south of the Belzere tract and its east boundary line is an extension south of the east boundary line of the Belzere tract, and its west boundary line is an extension south of the Belzere west boundary line. Appellee's 38.86 acres is across the county road from the southern end of the Belzere tract. Second, prior to the death of P. J. Willis, the tract of 38.86 acres was the homestead of his family, and for about two years prior to his death appellee was a servant in the Willis home. Willis was a real estate agent prior to his death and the owner of the Belzere tract had listed it with him for sale. Appellee had access to Willis' books and when he was not at home appellee, under his instructions, showed prospective purchasers the land that Willis had listed for sale. There was testimony to the effect, given by appellee, that the owners of the land in controversy listed it with Willis for sale; but, when all her testimony is given due consideration, the jury could have found that Willis did not have the land in controversy listed with him, and that appellee never showed this land to any prospective purchaser; however, she learned of the lines and corners of this land from Willis' books. Appellee was in no sense a partner in business with Willis; nor his heir at law; nor did she succeed him in the real estate business that he had carried on immediately prior to his death; nor did she ever at any time carry on or have any interest whatever in a real estate business. Third, immediately after the death of Willis in November, 1912, appellee began claiming the land in controversy which, at that time, was not under fence. In 1917 Dr. Butte inclosed 10,000 acres of land in a pasture. The fence on the west side of this pasture ran south about 500 varas west of the county road to a point immediately west of the northwest corner of the land in controversy; from that corner the fence ran east to the west side of the county road, to a point immediately west of the northwest corner of the land in controversy; from that corner the fence ran south with, and on the west side of, the county road to a point a few varas north of the southeast corner of the 38.86 acres; from that point the fence ran east and entered the Belzere tract a short distance; thence south almost parallel with the west boundary line of the Belzere tract; thence south of east about 3/4ths of the distance across the Belzere tract; thence in a southeasterly direction, with a curve after

it entered the Ott tract, to a point on the east boundary line of the Ott tract a short distance south of its northeast corner; thence south with the east boundary line of the Ott tract to a corner, thence east, etc. Dr. Butte inclosed the land in controversy with appellee's permission and in recognition of her claim of ownership of that tract of land, and, based on that claim, while he held this pasture he permitted her stock to graze in the pasture. Fourth, Dr. Butte lost this pasture in 1919. The parties who took it over continued to use and operate it in recognition of appellee's claim of title to the land in controversy, under the same conditions under which Dr. Butte fenced it in 1917. In 1922 the new owners of the Butte land rebuilt their fences so as to exclude from the pasture the land in controversy, the Belzere tract, and the northeast corner of the Ott tract, by extending their fence across the county road on east with the north boundary line of the land in controversy to its northeast corner, thence south from the northeast corner of the land in controversy with its east boundary line and with the east boundary line of the Belzere tract and the Ott tract to the southeast corner of the Ott tract, etc. With this change in the fences, there was left inclosed with the land in controversy all of the Belzere 83 acres, except a few acres in its southwest corner, and the northeast corner of the Ott tract, and that section of the county road which bordered these three tracts on the west. Appellee pastured this land continuously from 1922, claiming, however, only the land in controversy. Her claim to this land and her use of it was exclusive, notorious, peaceable, adverse, and continuous, and recognized generally by the citizens who knew of the location of this land from 1922 to 1929, when she made the contract with Mr. McFaddin, described in the next succeeding fact conclusion. Appellee entered this inclosure with her stock through a gate where the fence crossed the county road at the southwest corner of the inclosure, as above described. There was also a gate in this fence where it crossed the road at the northwest corner of the inclosure. Fifth, in 1929 appellee made a contract with a Mr. McFaddin wherein the fences around the land in controversy, and the Belzere and the Ott tracts, were rebuilt so as to include all of these three tracts of land, and to exclude the county road. Appellee and McFaddin used the land jointly for pasture purposes, appellee claiming the land in controversy and McFaddin holding as tenant under the owners of the Belzere and Ott tracts. Sixth, from the beginning of appellee's claim in 1912, until this suit was filed, her claim to this land was notorious and her possession was exclusive from 1922, except when she and McFaddin used the three tracts jointly, each, however, in due recognition of the rights of the other.

■ These fact conclusions support the answer of the jury to the only question submitted; and, as we understand the record, the evidence was insufficient to invoke the propositions of law relied upon by appellant. We say this, first, because the evidence was sufficient to warrant a finding that no privity existed between Willis and the owners of the land in controversy and, therefore, no privity could possibly have existed between appellee and the owners of this land; second, if it be conceded that Willis had an agency for Mrs. Hoppe to sell this land, there was no privity between his agency and the subsequent claim of appellee. Her claim to the land did not rest to any extent upon any agency that might have existed between Willis and Mrs. Hoppe. The death of Willis revoked any agency he might have had. At the time of his agency, if agency was shown, the land was unfenced and it was five years after his death before it was fenced, at which time appellee claimed it and Dr. Butte included it in his pasture with her permission. These facts were sufficient to raise against appellant the issue of appellee's adverse claim. Buford v. Wasson, 49 Tex.Civ.App. 454, 109 S.W. 275, 278 (writ of error denied), is the principal authority relied upon by appellant in support of its proposition of privity. The following quotation from that opinion clearly distinguishes it from the facts of this case, even as construed by appellant:

"The status of the tenancy relation between Ballard and appellants is not positively shown to be known to appellee; but it appears as a fact without conflict that appellee entered the premises under Ballard, holding the same possession and character of possession of the premises, and that appellee obtained possession of the premises through and from and as successor to Ballard and with Ballard's consent, and that Ballard at the time was a tenant recognizing appellants' right and title, and that appellee at all times held the possession under the right of Ballard, by virtue of which he entered and claimed and asserted."

498

■ Appellant's third and fourth propositions, as summarized above, are to the general effect that the use of the land, as fenced, was not sufficient to give notice to the owner of an adverse claim and, second, that the use of the land for pasture purposes only was not sufficient to constitute notorious possession. The fact conclusions, as we have given them above, sufficiently answer these contentions.

■ Appellant assigns error against the conduct of the jury while deliberating· on their verdict. The trial court heard evidence in support of this assignment and made the following fact conclusion, refuting appellant's contentions:

"I find as a fact that the juror Saunders did not make the statement in the jury room or to the jury to the effect 'that he had ten acres of land enclosed, five acres of which belonged to a man he knew, and five acres belonging to an unknown owner who had never bothered him and had never come to look after his land and that there were many nonresident owners who paid no attention to their land, and that a man who did not look after his land ought to lose it', all as alleged in plaintiff's amended motion for new trial. I do find that the witness Saunders stated, in effect, to some of the jurors that he had learned some law on this case because he had some land under fence which he believed he could claim by limitation, but this statement was made after the jury had arrived at their answers and verdict and as they were coming into the court room to deliver their verdict to the court and not made while the jury was deliberating on their verdict, as alleged.

"In brief, I find that none of the facts alleged in plaintiff's motion which he says constituted misconduct of the jury occurred in the manner and the form as alleged by plaintiff and that the references that were made, as shown by these findings were either within the record in this case or else made in a manner and at a time as not to constitute misconduct."

This assignment is overruled.

■ Appellant duly excepted to the following argument by appellee's attorney: "While Mr. Flagg, attorney for defendant, Bertha Kahanek, was addressing the jury, among other remarks, he made the following statement to the jury:

" 'I am glad the ten-year statute of limitation is on the statute books of Texas, God bless them. They have been on the statute books of this great Commonwealth since it was rocked in the cradle of the Republic. They prevent northern capital from coming to Texas and buying our land and holding if for speculation, and * * *.'

"To which counsel for plaintiff objected and the court stopped Mr. Flagg and instructed the jury to disregard his remarks, whereupon Mr. Flagg apologized to the court and to the jury, and to all of which plaintiff excepted in open court." The court approved appellant's bill with the following qualification:

"Plaintiff's foregoing bill of exception is approved only, however, subject to the following qualification:

"No stenographic report was taken of the argument of either counsel in this case.

"The Court's recollection is that Mr. Flagg, attorney for defendant, did use in his argument to the jury substantially the language quoted in the foregoing bill, except that said language was immediately prefaced with the statement, 'Gentlemen, you have heard all that Mr. Carl has said about the statutes of limitation'.

"The language complained of was made in Flagg's closing argument to the jury.

"Mr. Carl, attorney for plaintiff, in his argument to the jury, in the Court's opinion referred disapprovingly by innuendo to our statutes of limitation as applicable to land and disparagingly of any person who claimed land by limitation by saying in substance: 'I don't know what you gentlemen think about a person who would try to get land like this defendant. I would hate to tell you what I think about a person who would try to get land in this manner'.

"The Court was of the opinion that if Mr. Flagg's remarks complained of were improper same were invited by plaintiff's argument above quoted. When Mr. Flagg reached the point in his argument as shown in the bill, Mr. Carl registered an objection and exception with the Court. The Court immediately interrupted Mr. Flagg, informing him that his argument was improper and instructed the jury to disregard Flagg's remarks aforesaid. Flagg then immediately apologized to the Court and to the jury and himself asked the jury to disregard his remarks. After this incident Mr. Carl stated to the Court that he still wanted his bill of exception. No spe-

cific exception was reserved to the effect that the admonition of the Court did not efface the injury complained of.

"If plaintiff is willing to accept the foregoing qualification, then his aforesaid bill of exception is approved, signed and ordered filed as part of the record in this cause; otherwise said bill of exception is refused and the Court files this qualification, incorporating therein the language shown in the foregoing bill as its bill of exception in lieu of plaintiff's bill of exception."

It is our conclusion that the charge of the court instructing the jury not to consider Mr. Flagg's argument and his apologies to the court and request to the jury to disregard his remarks removed all prejudice and injury from this argument.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.