WEST PRODUCTION COMPANY V. BERTHA KAHANEK.

No. 7135. Decided November 23, 1938.
Rehearing overruled January 4, 1939.
(121 S. W., 2d Series, 3z8.)

*Platt, West & Stevenson,* and *P. M. Stevenson,* all of Houston, *Stewarts, Noble Carl* and *Bryon Economidy,* all of Galveston, for plaintiff in error.

Under the facts of the case plaintiff's action was not barred by the ten year statute of limitation. Mhoon v. Cain, 77 Texas 317, 14 S. W. 24; Nolan v. Mundine, 79 S. W. 638; Cobb v. Robertson, 99 Texas 138, 86 S. W. 746.

*Henry W. Flagg,* of Galveston, for defendant in error.

The inclusion of other lands not adversely claimed, within the same inclosure with lands that are adversely claimed does not affect the adverse claim to the lands in controversy, so long as the lands do not come under Article 5511. English v. Johnson, 17 Calif. 116; Lyne v. Coon, 241 S. W. 569.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is an action of trespass to try title brought in November, 1934, by the plaintiff in error, West Production Company, to recover from the defendant in error, Bertha Kahanek, a certain tract of 80 acres of land in Galveston County. The plaintiff in error is entitled to the recovery it seeks unless same is defeated by the operation of the statute of 10 years limitation which the defendant in error has pleaded in defense against such recovery. The case was tried before a jury and the following special issue was submitted to the jury:

"Special Issue No. 1: Do you find from a preponderance of the evidence that defendant, Bertha Kahanek, had been in peaceable, adverse and continuous possession of the land in controversy, using the same as a pasture for grazing purposes for a period of ten consecutive years or more after the fall of 1922 and prior to the filing of this suit on November 22, 1934?"

The jury answered this special issue in the affirmative, and the trial court rendered judgment in favor of the defendant in error. The plaintiff in error appealed, and the Court of Civil Appeals affirmed the judgment. (94 S. W. (2d) 495). The West Production Company has been granted the writ of error.

The plaintiff in error concedes that, from the year 1929 to November, 1934, when this suit was commenced, the defendant in error held adverse possession of said 80 acre tract, but denies that the facts in evidence show that she held adverse possession thereof prior to the year 1929. This presents the only question in the case. The facts bearing on this question are thus stated in the conclusions of fact made by the Court of Civil Appeals:

"From the evidence, we make the following fact conclusions: First, the land in controversy is about 400 varas north of, and on the east side of a county road from, a tract of 38.86 acres of land devised to appellee by P. J. Willis, and which she took possession of and has used as her home since November 1, 1912. The county road is the west boundary line of the land in controversy and the east boundary line of appellee's home place. The Belzere tract of 83 acres lies immediately south of the land in controversy, its east boundary line is an extension south of the east boundary line of the land in controversy, and its west boundary line is an extension south of the west boundary line of the land in controversy. The Ott tract of 55 acres lies immediately south of the Belzere tract and its east boundary line is an extension south of the east boundary line of the Belzere tract, and its west boundary line is an extension south of the Belzere west boundary line. Appellee's 38.86 acres is across the county road from the southern end of the Belzere tract. Second, prior to the death of P. J. Willis, the tract of 38.86 acres was the homestead of his family, and for about two years prior to his death appellee was a servant in the Willis home. Willis was a real estate agent prior to his death and the owner of the Belzere tract had listed it with him for sale. Appellee had access to Willis' books and when he was not at home appellee, under his instructions, showed prospective purchasers the land that Willis had listed for sale. There was testimony to the effect, given by appellee, that the owners of the land in controversy listed it with Willis for sale; but, when all her testimony is given due consideration, the jury could have found that Willis did not have the land in controversy listed with him, and that appellee never showed this land to any prospective purchaser; however, she learned of the lines and corners of this land from Willis' books. Appellee was in no sense a partner in business with Willis; nor his heir at law; nor did she succeed him in the real estate business that he had carried on immediately prior to his death; nor did she ever at any time carry on or have any interest whatever in a real estate business. Third, immediately after the death of Willis in November, 1912, appellee began claiming the land in controversy which, at that time, was not under fence. In 1917 Dr. Butte inclosed 10,000 acres of land in a pasture. The fence on the west side of this pasture ran south about 500 varas west of the county road to a point immediately west of the northwest corner of the land in controversy; from that corner the fence ran east to the west side of the county road, to a point immediately west of the northwest corner of the land in controversy; from that corner

the fence ran south with, and on the west side of, the county road to a point a few varas north of the southeast corner of the 38.86 acres; from that point the fence ran east and entered the Belzere tract a short distance; thence south almost parallel with the west boundary line of the Belzere tract; thence south of east about 3/4ths of the distance across the Belzere tract; thence in a southeasterly direction, with a curve after it entered the Ott tract, to a point on the east boundary line of the Ott tract a short distance south of its northeast corner; thence south with the east boundary line of the Ott tract to a corner, thence east, etc. Dr. Butte inclosed the land in controversy with appellee's permission and in recognition of her claim of ownership of that tract of land, and, based on that claim, while he held this pasture he permitted her stock to graze in the pasture. Fourth, Dr. Butte lost this pasture in 1919. The parties who took it over continued to use and operate it in recognition of appellee's claim of title to the land in controversy, under the same conditions under which Dr. Butte fenced it in 1917. In 1922 the new owners of the Butte land rebuilt their fences so as to exclude from the pasture the land in controversy, the Belzere tract, and the northeast corner of the Ott tract, by extending their fence across the county road on east with the north boundary line of the land in controversy to its northeast corner, thence south from the northeast corner of the land in controversy with its east boundary line and with the east boundary line of the Belzere tract and the Ott tract to the southeast corner of the Ott tract, etc. With this change in the fences, there was left inclosed with the land in controversy all of the Belzere 83 acres, except a few acres in its southwest corner, and the northeast corner of the Ott tract, and that section of the county road which bordered these three tracts on the west. Appellee pastured this land continuously from 1922, claiming, however, only the land in controversy. Her claim to this land and her use of it was exclusive, notorious, peaceable, adverse, and continuous, and recognized generally by the citizens who knew of the location of this land from 1922 to 1929, when she made the contract with Mr. McFaddin, described in the next succeeding fact conclusion. Appellee entered this inclosure with her stock through a gate where the fence crossed the county road at the southwest corner of the inclosure, as above described. There was also a gate in this fence where it crossed the road at the northwest corner of the inclosure. Fifth, in 1929 appellee made a contract with a Mr. McFaddin wherein the fences around the land in controversy, and the Belzere and the Ott tracts, were rebuilt so as to include

all of these three tracts of land, and to exclude the county road. Appellee and McFaddin used the land jointly for pasture purposes, appellee claiming the land in controversy and McFaddin holding as tenant under the owners of the Belzere and Ott tracts. Sixth, from the beginning of appellee's claim in 1912, until this suit was filed, her claim to this land was notorious and her possession was exclusive from 1922, except when she and McFaddin used the three tracts jointly, each, however, in due recognition of the rights of the other."

In addition to the statute of ten years limitation upon which the defendant in error relies, being Article 5510 of the Revised Statutes, the following statutes bear on the question presented:

Article 5512 reads as follows:

"Possession of land belonging to another by a person owning or claiming five thousand acres or more of lands inclosed by a fence in connection therewith, or adjoining thereto, shall not be the peaceable and adverse possession contemplated by Article 5510 unless said land so belonging to another shall be segregated and separated by a substantial fence from said lands connected therewith or thereto adjoining or unless at least one-tenth thereof shall be cultivated and used for agricultural purposes or used for manufacturing purposes, or unless there be actual possession thereof."

Article 5515 reads as follows:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

■■ It is to be observed that prior to the year 1922, the tract of 80 acres of land in controversy constituted a part of a body of more than five thousand acres of land which Dr. Butte, in the year 1917, inclosed by a fence. The Butte pasture, thus inclosed, was, with the consent of Dr. Butte and the acquiesence of his successors, used by the defendant in error for grazing her cattle until the year 1922. This did not constitute "an actual possession" of the 80 acre tract, as the term is used in Article 5512 of the statutes, and, under the terms of said statute, did not constitute "adverse possession" as defined in Article 5515. Shaeffer v. Williams, 208 S. W. 220. (Writ ref.) In the year 1922, the tract in controversy, along with land not claimed by the defendant in error or by the new owners of the Butte pasture, was excluded from said pasture by a fence which was constructed for the purpose by the new owners of said pasture. The aggregate amount of land thus excluded from said pasture

was approximately 160 acres. The new fence was constructed along the north and east sides of this parcel of 160 acres, and was joined at each end to the old fence which Dr. Butte had built along the west and south sides of the 160 acres in the year 1917. The defendant in error has never claimed any part of said 160 acres except the tract of 80 acres in controversy. The building of the new fence in 1922, by the new owners of the Butte pasture, had no relation to the 160 acres, except to exclude same from the pasture. The fence was not built for the purpose of effecting an inclosure of said 160 acres. The defendant in error had nothing to do with the building of said fence. It is true that each end of the new fence was joined to the old fence which Dr. Butte had built in the year 1917 along the south and west sides of the 160 acres, and that this resulted in creating an inclosure of the 160 acres; but the creation of such inclosure was merely a casual result of the building of the new fence by the new owners of the Butte pasture for the purpose of excluding land therefrom which the new owners did not claim. The use of such newly inclosed land by the defendant in error for grazing cattle did not, of itself, constitute an actual and visible appropriation as provided in Article 5515. Fuentes v. McDonald, 85 Texas 132; Mhoon v. Cain, 77 Texas 316. Where the character of use of inclosed land, by a claimant of adverse possession, is not such as to constitute, of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of adverse possession nor any person under whom he claims has contributed. See Vineyard v. Brundrett, 42 S. W. 232. (Writ ref.) Our limitation statutes do not contemplate that a claimant of adverse possession can derive aid, in establishing his claim, from an inclosure casually created by third persons in effecting a different purpose of their own, and who are strangers to both the claimant of adverse possession and the true owner of the inclosed land. In such a case, the inclosure, so far as our limitation statutes are concerned, has no more effect than if same had never come into existence. It is quite true, as pointed out by counsel, that in the present case the defendant in error, during the entire period from the year 1922 to 1929, kept in repair the old fence which Dr. Butte had constructed in 1917, on the west and south sides of the 160 acres, and excluded the general public from said land, except the county road; but still the fact remains that the inclosure of said land was casually

brought about by strangers in the year 1922 and did not lose its identity until the year 1929.

It is seen, from what has been said, that the claim of adverse possession for ten years prior to the commencement of this suit, which the defendant in error asserts, is not sustained by the facts.

The judgment of the trial court and that of the Court of Civil Appeals are reversed and the cause is remanded to the trial court with instructions to enter judgment for the plaintiff in error for the land sued for.

Opinion adopted by the Supreme Court, November 23, 1938.

Rehearing overruled January 4, 1939.