**DEEP ROCK OIL CORP. et al.**
**v. ORSBORN.**

No. 6305.

Court of Civil Appeals of Texas.
Amarillo.

May 25, 1953.

Rehearing Denied June 29, 1953.

Turpin, Kerr & Smith, Midland, Andrews & Andrews, Stamford, Alexander & Martin, Fort Worth, Brookreson & Brookreson, Seymour (Irby Dyer, Midland, of counsel), for appellants.

Watson & Watson, Stamford, for appellee.

NORTHCUTT, Justice.

Appellee, Tom Orsborn, sued appellants, Deep Rock Oil Corporation et al., in the district court of King County, Texas, in trespass to try title to a tract of land of approximately 56.85 acres situated in King County, Texas, and being a part of the J. G. Eustis Survey No. 2. This case came on for trial October 20, 1952. C. B. Long, one of the defendants in the trial court on October 21, 1952, filed his disclaimer and does not contest the case at all. The appellants filed a general denial and also pleaded not guilty and prayed for judgment of the trial court that they go hence without day and recover cost of plaintiff.

The case was tried to the court without a jury. The trial court found that C. B. Long, the record owner of all the surface estate and an undivided ⅔₅th interest in and to the mineral estate, subject to an outstanding oil and gas lease executed by the said C. B. Long to F. B. Bowling, by filing

626

his disclaimer to all the land involved in this suit, which as to C. B. Long, constituted an admission of the title and claims of the appellee, Tom Orsborn. The trial court also found in favor of appellee as against appellants and granted judgment for appellee for the title and possession of the property in question, to which action of the court appellants excepted and have perfected this appeal.

Appellants make no claim to the surface of the land in question nor as to a ⅗th interest in the mineral estate; but claim a good record title to the mineral royalty and oil and gas leasehold estate in the land excepting only the ⅗th mineral interest and the surface estate belonging to C. B. Long. The claim of appellee is based solely upon the Statute of Limitations. J. T. Orsborn purchased certain land in 1919 known as the B. J. Glover Survey, A. H. La Duke Survey, and C. M. Brown Survey. During that same year J. T. Orsborn purchased the land known as the David Davis Survey and E. M. Ellis Survey. All of this purchased land constituted a long strip almost two miles in length lying along the north bank of the Brazos River. Immediately southwest of this land purchased was a strip of vacant land owned by the state. This vacant land was not purchased by Mrs. J. T. Orsborn until in 1951. Immediately south of this vacant land was the land in question. But all the purchased land, the vacant land owned by the state and the land in question were in the same enclosure. There is no showing in this record that the entire fence or enclosure was owned by appellee.

J. T. Orsborn died in 1933. There were five children born to J. T. Orsborn. Two of the children died in infancy. J. T. Orsborn died without leaving any will. Surviving him were his wife, two daughters, and this appellee, Tom Orsborn. Appellee's mother and two sisters have deeded all of their interest in the property in question to Tom Orsborn and he is the only interested party as appellee.

At the time J. T. Orsborn purchased the property above mentioned in 1919 there was a fence extending around all of the above-mentioned land together with the vacant land and the land here in question. In 1950 there was a survey made and it was discovered that there was some vacant land owned by the State of Texas that was within the above-mentioned enclosure. This land owned by the state lies between the land purchased by J. T. Orsborn in 1919 and the land in question. Mrs. J. T. Orsborn in 1951 made an application to the State of Texas to purchase and did purchase the land owned by the state. It is the contention of appellee that he owns the land in question since he and those through whom he holds and claims title and the right of possession have had peaceful, continuous, and adverse possession of the lands and tenements in question, cultivating, using, and enjoying the same for more than ten years prior to October 4, 1938 and from that date to the filing of this cause of action. The undisputed evidence shows that the fence above mentioned was there in 1919 but there is no showing at all as to when or by whom the fence was constructed. It is also undisputed that that part of the fence on the northwest part of the land in question is not on the land but is entirely upon Section 89. Appellee claims such land by virtue of four contentions, namely: the land was within the bounds of the fence mentioned, appellee had claimed the land; appellee had done some work in maintaining the fence, appellee had grazed his cattle on the same. Appellee makes no claim that he or his father ever paid any taxes on this property or that he has any kind of title other than by limitation. The mere mental claim of title on the part of the Orsborns without other actions on their part would not be of any weight in establishing title in them. The land in question was cut off completely from the Orsborns' land by virtue of the strip of land owned by the State of Texas and finally purchased by Mrs. J. T. Orsborn in 1951. Appellee made affidavit in assisting his mother to buy this land from the state acknowledging they made no claim to the land owned by the state. Even if they had claimed same they could not claim the land by limitation because limitation is not available against the state. Humble Oil & Refining Co. v. State, Tex.Civ.App., 162 S.W.2d 119, 134, stated:

"The State's title is not affected by the lapse of time, laches, adverse possession or payment of taxes. It is not estopped or otherwise adversely affected by the dereliction or failure to act of its officers; nor by the declarations or acts or long recognition of others. These principles are so well established as to be now regarded as elementary."

■ Appellee relies upon the grazing of cattle on this property as an act establishing his claim of limitation; but, under this record, before the cattle could graze upon the land in question they would have to cross the state land. Since there is nothing in the record to indicate who built the fence and the undisputed evidence shows that the fence to the north of the land in question is located on Section 89, the presumption could prevail that it belonged to and was built by the owner of Section 89. There is no fence on the east side of the land. The undisputed testimony in the case shows that the appellee never knew until 1951 that the land in question was in their enclosure. By what right could appellee claim the fence that enclosed all this land was his fence so as to even make it his enclosure? He had no claim to the vacant land owned by the state and we do not believe he could have, under this record, any claim to the fence upon the vacant land owned by the state. Without the fence, that was upon the vacant land, this land in question would never have been in the enclosure of appellee until his purchase in 1951 and the Ten-year Statute of Limitation would not apply. There is no testimony to show that the fence around the whole of the property claimed by appellee was his fence. If the fence on Section 89, that was not on the line but all on Section 89, belonged to the owner of Section 89, and we believe in the absence of any proof as to the ownership of the fence. that it would be assumed that it was a fence of the owner of Section 89. If this be true, then a part of the fence upon the land in question just joined the fence upon Section 89. Under this state of the record, the fact that appellee's cattle incidentally grazed on the land did not start the running of the Statute of Limitations. See Primitive Baptist Church at Fellowship v. Fla-Tex Corporation, Tex.Civ.App., 158 S. W.2d 549, 553.

"After Jones connected his outside fences with those of Rowan his stock continued to graze on his own lands, yet had an opportunity to and perhaps did range on the church lot as they had long done before any fencing was done. The fact that Jones' cattle incidentally grazed on the church lot while running in his woodland pasture, absent some other open, visible use, appropriation and enjoyment thereof, would not support the claim of adverse possession, sufficient to start the running of the statutes of limitation. This principle is announced by the following cases: Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457, 110 S.W.2d 555; West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328; and Allison v. Groppenbacher, Tex.Civ.App., 142 S.W.2d 528, writ refused."

To the same effect is McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948, 952, where it said:

"It is apparent from the manner in which the fences were constructed and maintained that the area in controversy fell into Roberson's enclosure only because there was a fence east of the creek that he could conveniently use with permission of its owner to complete his enclosure and thus avoid the expense and labor of building a fence along his east line. The inclusion of the small quantity of land along the creek was of little consequence, as the greater part of it was unfit for cultivation, being subject to overflow and overgrown with timber and brush.

"It is not shown that Benjamin Roberson ever built any improvements on the 4.4 acres. There is no evidence that Roberson ever paid taxes on the land in controversy or on any other land than that described in his deed. It was stipulated on the trial that neither Ben Roberson nor his heirs paid any taxes on the land after 1905. When Roberson sold and conveyed the

37 acre tract he used for description in the deed to his vendee the same description as that contained in the deed by which he had acquired the land from Parmelia Turner. There is no evidence of a sale or conveyance of the 4.4 acres from Roberson or his heirs to anyone until the deeds were made by Roberson's heirs to defendants in error in 1937, after land adjoining or nearby had been developed for oil. It has been held that evidence of failure to pay taxes is admissible as a circumstance tending to prove that land is not adversely claimed. Webb v. Lyerla, 43 Tex.Civ.App. 124, 94 S.W. 1095; Harris v. Wagnon, Tex.Civ. App., 148 S.W. 606; Manning v. Standard Oil Company of Kansas, Tex. Civ.App., 67 S.W.2d 919; Lynch Davidson & Co. v. Beasley, Tex.Civ.App., 128 S.W.2d 877, 879. It is held further in Manning v. Standard Oil Company of Kansas, supra, that abandonment of possession and failure thereafter over a long period of years to assert adverse claim, while not conclusive as to the hostility of the prior possession, are facts of evidentiary force to show that the possession was not hostile.

"Roberson's possession of the land lying east of the creek was not hostile to Wiley and Tucker, the owners of that land, because it was with their consent or acquiescence that he tied his fences to their fence and enclosed a small part of their land. West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328. His possession of the land belonging to Parmelia Turner was in the manner of its taking not different from his possession of the Wiley-Tucker land. It is not shown that he had permission from Parmelia Turner to enclose her land by extending his fences, but her land was casually enclosed by the extension of Roberson's fences to the Wiley-Tucker fence, which would not have been made but for permission given by Wiley or Tucker. It is not reasonable to assume that possession of the small area thus taken was in part hostile and in part not

hostile. We believe as the trial court believed, that the fair and reasonable inference from all of the facts is that possession of all of the small area in controversy was taken and maintained as a convenient way of making use of the fence east of the creek and without an intention to claim title adversely to the owner of the land."

■ The appellee in his pleadings attempted to show that he cultivated this land but of course, by the evidence, this is not true as no contention is shown as to any attempt to cultivate this land. See Richey v. Miller, 142 Tex. 274, 177 S.W. 2d 255, 258, 170 A.L.R. 832.

"It has been held that the use of land for grazing purposes only is not sufficient compliance with the statute. West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328; Fuentes v. McDonald, 85 Tex. 132, 20 S.W. 43; Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24.

"In the case of Fuentes v. McDonald, supra (85 Tex. 132, 20 S.W. 44), Judge Gaines, in rendering the opinion of this court said: 'There have been several cases decided in this court in which the effort has been made to show an adverse possession of land by merely grazing cattle and horses upon it, but it has uniformly been held that the possession was not sufficient to meet the requirements of the statute. Mason v. Stapper, Tex.Sup., 8 S.W. 598; Sellman v. Hardin, 58 Tex. 86; Andrews v. Marshall, 26 Tex. 212; Murphy v. Welder, 58 Tex. (235), 241. * * *'"

The trial court found that C. B. Long was the record owner of the surface estate and an undivided ⅔₅th interest in and to the mineral estate, subject to an outstanding oil and gas lease executed by C. B. Long to F. B. Bowling upon the land in question. The court further found that C. B. Long, by his disclaimer to all the land in question, constituted an admission on his part of the title and claims of Tom Orsborn, and granted title and possession to Tom Orsborn to the surface estate and

an undivided ⅔₅th interest in the mineral estate from which no appeal was taken. Appellants make no claim as to the surface estate nor to the undivided ⅔₅th interest in the mineral estate. We find no fault with the conclusion of the trial court to the effect that Tom Orsborn is entitled to title and possession of the surface of the land in question and an undivided ⅔₅th interest in the mineral estate by reason of the Long disclaimer.

However, from what has been said, we are of the opinion that the trial court erred in holding that the appellee, Tom Orsborn, was entitled to the judgment for title and possession as against these appellants by virtue of the statute of limitation. The judgment of the trial court in favor of appellee as to the claims of appellants is therefore reversed and rendered that appellee recover nothing by his cause of action as against appellants.