**Pauline MOHNKE, Appellant,**

v.

**Wanda M. GREENWOOD, Appellee.**

**No. 14–94–01032–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 11, 1996.

Michael Donald Stull, Houston, Victoria H. Gallagher, Tomball, for appellant.

William T. Green, III, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

This is an appeal by Pauline Mohnke and her family (the "Mohnkes")[1] from a trial before the court that resulted in a take-nothing judgment in favor of appellee, Wanda M. Greenwood ("Greenwood"). At issue is the ownership of an approximate 0.016 acre strip of land in Harris County, Texas. The Mohnkes raise twelve points of error on appeal. We affirm.

## I. BACKGROUND

In 1967, the Mohnkes purchased an approximate 99 acre tract of land. At that time a barbed wire fence surrounded the property. The fence was put up in 1961 to replace a fence that had been there since before 1930. In connection with their purchase, the Mohnkes hired Robert M. Atkinson, Sr. ("Atkinson") to prepare a survey. The survey set the boundary of the property at the fence line. The Mohnkes used the land to graze cattle. In the late 1960's the Mohnkes planted Loblolly pines inside the perimeter of the barbed wire fence.

In 1988, Greenwood purchased a 5.5 acre tract that abutted the Mohnkes' land to the east. In connection with her purchase Greenwood, too, had the land surveyed. Greenwood's surveyor, Thomas G. Robinson ("Robinson"), marked a different boundary, which showed that the barbed wire fence was encroaching onto the Greenwood property. Greenwood tore down that part of the barbed wire fence that encroached on her land, and constructed a wooden fence approximately eight feet to the west of where the barbed wire fence had stood.

The Mohnkes brought suit against Greenwood to establish the correct boundary and for adverse possession. They also claimed the boundary was established by acquiescence. Greenwood responded that the true boundary was where she placed her fence,

---

1. Mr. Mohnke is now deceased. Mrs. Mohnke has deeded her interest in the property to their children, who are other named plaintiffs and true parties in interest. Because there is no difference in the claims being asserted by the plaintiffs, appellants' brief designated all references to ownership as though Pauline and Max Mohnke were still the owners of the property. See Appellant's Brief, p. 2 n. 1. We adopt the same designation for purposes of this opinion.

that there was no boundary by agreement and that a cause of action did not lie for adverse possession. After a trial to the bench, the court rendered judgment in favor of Greenwood. Both parties submitted proposed findings of fact and conclusions of law. On August 24, 1994, the court signed findings and conclusions supporting the judgment in favor of Greenwood.

Appellants bring twelve points of error contending that the evidence was legally and factually insufficient to support the trial court's findings. Appellants also assert error in the trial court's alleged failure to make additional findings of fact and conclusions of law, and in his failure to award them attorney's fees.

## II. STANDARD OF REVIEW

■ Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, a trial court's findings of fact are not conclusive when a complete statement of facts appears in the record, as it does here. *See Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's verdict. *Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ).

■ When confronted with both legal and factual sufficiency points, we must first examine the legal sufficiency point. *Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1993, writ denied). An appellant attacking the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence conclusively establishes all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989);

*Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex.App.—Houston [14th Dist.] 1989, writ denied). In reviewing a "matter of law" point, the reviewing court employs a two prong test. The court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner*, 767 S.W.2d at 690. If there is no evidence to support the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If the proposition asserted by the appellant is established as a matter of law, the point of error will be sustained.

■ When a party who has the burden of proof attacks the factual sufficiency of the evidence to support an adverse finding, he must demonstrate that the finding is against the great weight and preponderance of the evidence. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied). In reviewing such a challenge, the appellate court must examine the entire record, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986), and set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Zieben*, 786 S.W.2d at 799. The findings of fact must be upheld if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979).

■ When undertaking a factual sufficiency review, the court of appeals may not set aside fact findings merely because it could have drawn different factual findings and legal conclusions from the evidence. *First Baptist/Amarillo Found. v. Potter County Appraisal Dist.*, 813 S.W.2d 192, 196 (Tex.App.—Amarillo 1991, no writ). The appellate court cannot retry the case or otherwise substitute its judgment or opinion for that of the trier of fact. *Baptist Memorial Hosp. Sys. v. Smith*, 822 S.W.2d 67, 81 (Tex.App.—San Antonio 1991, writ denied). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given

their testimony, and the appellate court should not act as a thirteenth juror in assessing the evidence and the credibility of the witnesses. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

## III. REQUEST FOR ADDITIONAL FINDINGS AND CONCLUSIONS

■ In their first point of error, appellants argue that the trial court erred in not making additional findings of fact and conclusions of law. Appellee responds that this point is waived because appellants did not make a proper request for additional findings and conclusions. We agree.

The trial court signed the Final Judgment in favor of Greenwood on July 15, 1994. The appellants became concerned that their proposed findings of fact and conclusions of law and proposed judgment had been misfiled and had therefore not been considered by the court. Because of this concern the appellants, on July 27, 1994, filed a motion to reconsider. The motion requested the court to "reconsider the Judgment which the court entered on July 15, 1994, taking into account the proposed Findings of Fact and Conclusions of Law filed by BOTH parties to the suit." Approximately one month later, on August 24, 1994, the trial court signed its Findings of Fact and Conclusions of Law. The record reflects no request by appellants for additional findings or conclusions.

■ While the trial court is required to make additional findings of fact and conclusions of law on ultimate issues when they are timely requested, it is not required to do so when there is no request after the judge has issued his findings and conclusions. *Finch v. Finch,* 825 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Lutz v. Lutz,* 508 S.W.2d 955 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). We decline to recognize appellants' motion to reconsider, filed *before* the court issued its findings, as a proper request for additional findings. Point of Error Number One is therefore waived.

2. Robert A. Atkinson, Sr., who prepared the 1967 survey, was deceased at the time of trial. His son, Robert A. Atkinson, Jr., was presented as the Mohnkes' expert witness at trial. Although the

## IV. DETERMINATION OF BOUNDARY

In their second point of error, appellants challenge the trial court's finding that their survey did not conclusively establish the true boundary as the barbed wire fence. Although appellants challenge the trial court's finding as a matter of law and request this court to reverse and render, the point of error asserts that the finding was against the great weight and preponderance of the evidence, a factual insufficiency point. We will therefore address appellants' second point of error in terms of both legal and factual sufficiency.

The trial court concluded that the Mohnkes failed to meet their burden of establishing the true boundary of the property in dispute. The court made the following findings of fact to support this conclusion:

1. The survey prepared by Mr. Atkinson (the father of Plaintiffs' expert witness)[2] in 1967 did not locate any rods or monuments as the basis of its survey.

2. The 1967 survey set monuments or rods along the existing fence line.

3. The 1967 survey relied on one prior recorded deed which also did not refer to any monuments or rods.

4. Plaintiffs' expert witness, Mr. Atkinson, did not participate in the preparation of the 1967 survey.

5. Defendant's surveyor, Mr. Robinson, relied on prior recorded documents including a plat of the property (Defendant's Exhibit 3).

6. The 1967 survey was a fence survey, that is, it was based on the fence line.

Appellants claim that the court's findings and conclusions are erroneous because they are based upon the survey prepared by Robinson, appellee's expert, which fails to follow the law of legal preferences. Appellee acknowledges that the law of legal preferences controls, but claims that Robinson's survey comports with that law.

son testified that he may have worked on the 1967 survey, the trial court found that he "did not participate in the preparation of the 1967 survey." Finding of Fact No. 4.

 The law in Texas is clear that in locating disputed boundary lines priority must be given to the calls of the original grant which are more specific and definite in preference to those merely general and indefinite. *Stafford v. King,* 30 Tex. 257 (1867); *Taylor v. Higgins Oil & Fuel Co.,* 2 S.W.2d 288, 300 (Tex.Civ.App.—Beaumont 1928, no writ). In *Stafford,* the court discussed the proper manner by which to establish boundaries in a patent. When a patent is issued, the surveyor is to "run round the land located and intended to be embraced by the survey and patent, and see that such objects are designated on it as will clearly point out and identify the locality and boundaries of the tract...." *Id.* at 269–70. The surveyor is to take field notes on the land, which should include natural and artificial objects, if any, and courses and distances. *Id.* Often, however, the objects or "calls" referenced in the field notes will disappear over time. Therefore the law has created a priority, referred to as the dignity of calls, when trying to re-establish the boundary in a later transfer of title. *Id.* at 271. The law of legal preferences gives dignity to calls in the following order: (1) natural objects; (2) artificial objects; (3) course; and (4) distance. *Id.; City of Carrollton v. Duncan,* 742 S.W.2d 70, 72 (Tex.App.—Fort Worth 1987, no writ).

 Appellants contend that the survey prepared by Robinson did not follow the dignity of calls and should therefore not have been considered by the court. Appellants' argument is premised on the assumption that the barbed wire fence was an "artificial object" that should have been given preference. However, Robinson testified that fences are artificial objects for legal preference purposes only insofar as they may be used to set corners; the fence itself is not an artificial object because "fences wander all over the place." Both Atkinson and Robinson agreed on the setting of the southeast corner of the property. The discrepancy between the two surveys arose in the tapering of that line as it goes north.

The 1927 deed upon which Atkinson relied did not refer to the fence as an artificial object, nor did it refer to monuments or rods.

Rather, Atkinson set the deed rods himself, and chose to set them with reference to the fence. Atkinson set the northeast corner at the intersection of two points of fence "since there was a little kink in the fence." Because he chose to follow the fence line, Robinson referred to the Atkinson survey as merely a "fence survey." Robinson, on the other hand, relied upon the original 1905 deed and other recorded documents, including a plat of the property. He also relied upon the work of Mr. Easy, who had done a comprehensive survey of the entire 330 acre tract of which the property in dispute is a part, which showed a lot of monumentation that he could tie into. Because both surveys relied on prior deeds that referenced no artificial objects, the law regarding the dignity of calls was immaterial.

Based upon the foregoing, we find there is more than a scintilla of evidence to support the trial court's conclusion that appellants failed to establish the true boundary of the property in dispute. Appellants have failed to demonstrate that the evidence conclusively established all vital facts in support of their survey as a matter of law. Because there is some evidence to support the trial court's findings, we now turn to appellants' claim that the findings are against the great weight and preponderance of the evidence. In doing so, we must examine the evidence both in support of, and against, the court's finding. Because we have already reviewed the evidence supporting the court's findings, we will now review the evidence contrary thereto.

Appellants' expert testified that the Atkinson survey set the northeast corner of the property at the intersection of two points of the fence "since there was a little kink in the fence." Atkinson, Jr. testified that "[t]he evidence on the ground fit the [1927] deed calls very closely." The sum and substance of Atkinson, Jr.'s testimony was that, although the Atkinson survey set the monuments and rods along the fence line, the fence line comported "closely" with the deed description.

The 1927 deed upon which Atkinson relied had no monuments, rods, or artificial objects; it just called for course and distance. The 1905 deed upon which Robinson relied also

just called for course and distance. Evidence was presented as to the accuracy of both surveys, and the court found for the appellee. Considering all of the evidence, we do not believe that the trial court's findings are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176.

Point of Error Number Two is overruled.

## V. ADVERSE POSSESSION

In Points of Error 3, 4, 6, 7, 8, 9, 10 and 11, appellants contend that the court erred by not finding that they held title in the disputed tract by adverse possession under either the ten or the twenty-five year adverse possession statutes. Again, the appellants contest the legal and factual sufficiency of the court's findings.

█ First we will address appellants' seventh point of error. Appellants contend that the trial court erred in concluding that this case was not a case of adverse possession since there was no dispute between the parties except as to the location of the boundary. We agree that the court's reliance on *Plumb v. Stuessy,* 617 S.W.2d 667, 669 (Tex.1981) to support this proposition is misplaced. *Plumb* actually dealt with the level of proof required in a trespass to try title action where the sole issue involved the establishment of a boundary. *Id.* In fact, many cases involving a boundary dispute also involve adverse possession, and we can find no authority for the proposition that the claims are mutually exclusive. *See, e.g., Wall v. Carrell,* 894 S.W.2d 788 (Tex.App.—Tyler 1994, writ denied); *McAllister v. Samuels,* 857 S.W.2d 768 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Dellana v. Walker,* 866 S.W.2d 355 (Tex.App.—Austin 1993, writ denied). However, while we agree that the trial court erroneously concluded "this is not an adverse possession case," the court went on to make findings on adverse possession "even if this was an adverse possession case." Therefore, this point of error is moot.

The trial court made the following conclusions of law regarding appellants' adverse possession claim:

3. Even if this was an adverse possession case, the fence apparently constructed by a predecessor in title of the Plaintiffs was a casual fence and thus cannot support an adverse possession claim. *Rhodes v. Cahill,* 802 S.W.2d 643, 646 (Tex.1990); *Orsborn v. Deep Rock Oil Corp.* [153 Tex. 281], 267 S.W.2d 781, 785 (Tex.1954) ("If the fence existed before the claimant took possession of the land and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a casual fence.")

4. Use of property merely for grazing is insufficient to support a limitations title claim. *Blankenship v. Carpenter,* 741 S.W.2d 578 (Tex.App.—Waco 1987, writ dism'd).

The court's conclusions were based upon the following findings of fact:

9. The fence along the boundary of the property in dispute was in existence at the time of Mr. and Mrs. Mohnke's purchase in 1987.

11. There was no evidence submitted by Plaintiffs as to the purpose of construction of the barbed wire fence.

13. The fence apparently constructed by Plaintiffs' predecessor in title was a casual fence.

14. There was no evidence as to the purpose of construction of the barbed wire fence that Plaintiffs rely on in this case as establishing the boundary.

We must now determine whether the court's findings and conclusions have support in the law and in the record.

According to Section 16.021 of the Texas Civil Practice & Remedies Code, "adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX.CIV.PRAC. & REM.CODE ANN. § 16.021 (Vernon 1986). A showing of adverse possession is required under both the ten and twenty-five year statutes of limitations. TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.026, 16.027 (Vernon 1986).

The party seeking to establish title by limitation has the burden to prove every fact essential to the claim by a preponderance of the evidence. *Rhodes v. Cahill,* 802 S.W.2d at 645.[3] To establish title through adverse possession, "the possession must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rick v. Grubbs,* 147 Tex. 267, 214 S.W.2d 925, 927 (1948). In determining what will amount to adverse possession, considerable importance is placed on the nature of the land and its use. *Wall v. Carrell,* 894 S.W.2d at 800.

Appellants argue that the existence of the barbed wire fence, the use of the land for grazing cattle and the planting of pine trees establish hostile possession as a matter of law. However, these factors alone are insufficient to establish title by adverse possession unless the disputed property was "designedly enclosed" for appellants' use. *Rhodes v. Cahill,* 802 S.W.2d at 646; *McDonnold v. Weinacht,* 465 S.W.2d 136, 142 (Tex. 1971); *Orsborn,* 153 Tex. at 287, 267 S.W.2d at 785.

The case law distinguishes between two types of enclosures for adverse possession purposes: "casual fences" and fences that "designedly enclose" an area. The need for this distinction between types of enclosures arose because, in Texas, owners of livestock are not required to fence in or tether their cattle. *McDonnold,* 465 S.W.2d at 141. As a result, Texas has always treated unenclosed lands as commons for grazing livestock. *Id.* Therefore, the use of unenclosed lands for grazing livestock, because it is allowed by law, cannot of itself constitute adverse possession. *Id.* Moreover, not every enclosure capable of turning livestock will support a claim of adverse possession. *Id.* As stated by the Texas Supreme Court in *McDonnold:*

> The grazing of an enclosure thus "casually" or "incidentally" created has never been regarded as an actual and visible

appropriation of the land within the meaning of [the statute].

*Id.* Similarly, in *West Production Co. v. Kahanek,* 132 Tex. 153, 158, 121 S.W.2d 328, 331 (1938), the court stated:

> Our limitation statutes do not contemplate that a claimant of adverse possession can derive aid, in establishing his claim, from an inclosure casually created by third persons in effecting a different purpose of their own, and who are strangers to both the claimant of adverse possession and the true owner of the inclosed land. In such a case, the inclosure, so far as our limitation statutes are concerned, has no more effect than if same had never come into existence.

It is thus well-settled that the mere grazing of land incidentally enclosed by a fence created by others cannot support a claim of adverse possession. *McDonnold,* 465 S.W.2d at 142; *Kahanek,* 121 S.W.2d at 331. Where the fence existed prior to the claimant's possession of the land and the claimant fails to demonstrate the purpose for which the fence was erected, the fence is a casual fence. *Rhodes,* 802 S.W.2d at 646.

It is undisputed that the barbed wire fence was in existence at the time appellants purchased the property. In an effort to show the purpose for which the fence was erected, appellants presented the testimony of Mr. Cydel and Mr. Hirsch, who had lived near the property since they were born in 1919 and 1932, respectively. Both men testified that they did not remember when the original fence was erected, but that it had always been used to keep cattle in and to delineate the border with the adjacent property. Mrs. Mohnke also testified that the land had always been used to graze cattle and to delineate the border. Although these witnesses testified as to how the fence had been *used,* no one testified that this was in fact the original *purpose* of the construction. In fact, no one knew who had originally constructed the fence. Thus the trial court's finding that no evidence was submitted as to the purpose

---

3. Although some decisions have indicated that the requisite proof must be "clear and satisfactory," *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 290, 267 S.W.2d 781, 787 (1954), this is but an admonition that the fact finder should exercise great caution in weighing the evidence. *Rhodes,* 802 S.W.2d at 645 n. 2.

of the construction of the fence is supported by the record.

As already discussed, use of property purely to graze cattle is insufficient to support a limitations title claim. *Blankenship v. Carpenter*, 741 S.W.2d at 580. Appellants argue, however, that a different analysis should apply where there is a showing of continual and exclusive grazing. Appellants rely upon the following language in two decisions from the San Antonio Court of Appeals:

active and total use of the pasture grazing capacity to the exclusion of all others, with the claimants' livestock continuously present and visible, evidences the required notice of a hostile claim ... [u]nder these circumstances a showing of designed enclosure is not necessary.

*Butler v. De La Cruz*, 812 S.W.2d 422, 424 (Tex.App.—San Antonio 1991, writ denied), *citing Fish v. Bannister*, 759 S.W.2d 714, 719 (Tex.App.—San Antonio 1988, no writ). However, both of these cases involved significant use of the land for purposes other than grazing. In *Fish* there was evidence of constant, heavy grazing, occasional overgrazing, pipeline easements, and leases of the disputed tract to hunters and other cattle grazers. *Fish*, 759 S.W.2d at 720. The *Fish* court specifically held, "[s]ince there is evidence of uses other than grazing, the 'grazing only' exception does not apply." *Id.* In *Butler* the claimants, in addition to using the disputed tract for constant, continuous grazing, "made other significant uses of the disputed tracts," including keeping goats and pigs, building corrals and pens, cultivating the land at different times for corn and sorghum, and chasing trespassers off of the land. *Butler*, 812 S.W.2d at 424–25.

In the present case, the evidence showed mere grazing of cattle. There was no evidence of overgrazing, leasing, or any other significant use of the land as was present in *Fish* and *Butler*. Therefore, in order to prevail under a theory of adverse possession, appellants were required to overcome the presumption that the fence was a casual fence by showing that it became a designed enclosure. *Rhodes*, 802 S.W.2d at 646.

Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's cattle within the enclosed area, generally does not change the fence into a designed enclosure. *Id.* However, a claimant may so substantially change the character of a casual fence that it becomes a designed enclosure. *Id.; Butler v. Hanson*, 432 S.W.2d 559 (Tex.Civ.App.—El Paso 1968), *rev'd on other grounds*, 455 S.W.2d 942 (Tex.1970). In the trial below, all of the evidence of adverse possession surrounded the fence and grazing of cattle. There was no evidence of any other use of the land besides grazing cattle nor was there evidence of any major repairs on the fence. The appellants appear to argue that the planting of pine trees substantially altered the character of the fence such that it became a designed enclosure. Mrs. Mohnke testified that the trees were planted to shade the cattle and delineate a boundary. However, courts have found such things as cutting weeds, deer hunting, gardening and clearing trees insufficient to establish a designed enclosure. *McDonnold*, 465 S.W.2d at 144; *H.L. Brown & Assoc., Inc. v. McMahon*, 525 S.W.2d 553, 558 (Tex.Civ.App.—Tyler 1975, no writ); *Sims v. Cage*, 523 S.W.2d 486, 490 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Rhodes*, 802 S.W.2d at 646. As stated by the Texas Supreme Court in *Rhodes*, "we have neither been cited to nor found a case that establishes whether or when modification requires a finding of adverse possession as a matter of law." *Rhodes*, 802 S.W.2d at 646. The question of adverse possession is one of fact, and only in rare instances can a court hold that adverse possession has been established as a matter of law. *Wall v. Carrell*, 894 S.W.2d at 800. The trial court failed to find that the planting of the pines substantially altered the character of the fence. We cannot conclude, based on the record before us, that the court's findings and conclusions regarding adverse possession are erroneous as a matter of law. Moreover, considering all of the evidence, we do not believe that the trial court's findings are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176.

Points of Error 3, 4, 6, 7, 8, 9, 10 and 11 are overruled.

## VI. BOUNDARY BY ACQUIESCENCE

 In their fifth point of error, appellants contend that the court's finding that there was no boundary by agreement was against the great weight and preponderance of the evidence. Appellees respond that the evidence failed to establish an essential element of this claim. We agree.

 In order to establish a boundary by acquiescence, appellants had to show that the location of the fence was agreed to as a result of a disagreement between the landowners over the boundary line of their respective properties. "The existence of uncertainty, doubt or dispute is essential to the validity of such [an] agreement." *Gulf Oil Corp. v. Marathon Oil Co.,* 137 Tex. 59, 152 S.W.2d 711, 714 (1941); *McAllister v. Samuels,* 857 S.W.2d at 778 (holding that without uncertainty as to the true boundary line there can be no boundary by acquiescence). When there is no doubt as to the true location of the boundary, mere proof of acquiescence in an erroneous line will not support a finding of boundary by agreement. *Wall v. Carrell,* 894 S.W.2d at 798, *citing Kirby Lumber Corp. v. Lindsey,* 455 S.W.2d 733 (Tex.1970).

Appellants cite to no evidence in the record, and we can find none, that supports this element of boundary by acquiescence. Appellants appear to argue that, because the surveys of Atkinson and Robinson delineate different boundary lines, the "uncertainty, doubt or dispute" element is satisfied. However, it is fundamental that the doubt or uncertainty must be known to the landowners at the time they agree to the boundary. *See, e.g., Kirby,* 455 S.W.2d at 738–39; *Gulf,* 152 S.W.2d at 714; *McAllister,* 857 S.W.2d at 778. Appellants again point to the testimony of Mr. Cydel and Mr. Hirsch, who stated that the fence was there for cattle grazing purposes and as a boundary line. However, neither witness testified that the fence was placed there as a result of a dispute or uncertainty as to the boundary line. In fact, neither of them knew who had constructed the original fence. A review of the record reveals no evidence of a misunderstanding or uncertainty as to the true boundary between the adjacent property owners. Without such a dispute, there can be no boundary by acquiescence.

Point of Error Number Five is overruled.

## VII. ATTORNEYS FEES

In their final point of error, appellants argue that the court erred in not awarding the Mohnkes their attorney's fees. Since we affirm the decision below, this point is moot. Point of Error Number 12 is overruled.

The decision of the trial court is affirmed.