Opinion issued January 28, 2010






 



 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00159-CV

____________


LONNIE PHILLIPS AND LANCE PHILLIPS, AS NEXT FRIEND,
Appellants


V.


BETTY WILLY AND KIMBERLY RAE BING THOMPSON, as
EXECUTOR OF THE ESTATE OF KENNETH BING, Appellees






On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 41452






MEMORANDUM OPINION

 This appeal arises from a suit to clear title to a 50-acre tract of land. The
parties, or their predecessors in interest, have been in litigation over this land for
more than 30 years. Appellants, Lonnie Phillips and Lance Phillips, as next friend,
("appellants," collectively, "Lonnie" and "Lance," individually), appeal judgments
rendered against them upon separate motions for summary judgment filed by
appellees Betty Willy ("Willy") and Kimberly Rae Bing Thompson ("Bing"), the
executor of the estate of Kenneth Bing, in an action filed by appellants in 2000. (1) We
determine whether the trial court erred in granting Willy's and Bing's motions for
summary judgment and denying appellants' motion for summary judgment. We
affirm.

Background 

 The parties on appeal are not in agreement as to the history of the land at issue. 
Because the trial court rendered summary judgments, no findings of fact as to such
history were made and, therefore, no binding history has been established. However,
based on documents that were either attached to various pleadings or otherwise
appear in the record on appeal--some of which were proper evidence before the trial
court, and some of which were not (2)--the following story emerges. 

 A. 1914-68 

 Gabel and Larnie Phillips purchased 50 acres of land in March 1914. The land
was later seized by the State for unpaid taxes and sold at a tax sale in 1932. In 1934,
then-owners, J.F. Harris and J.S. Montgomery, sold the land to John Phillips and
Alexander Jackson. 

 Alexander Jackson had eight children, including Madora Jackson ("Madora"),
who married Lonnie Phillips ("Lonnie, Sr."), son of Gabel Phillips, in 1919. Jackson
died in 1944. The record does not establish whether Jackson died intestate or what
happened to his interest in the land.

 In June 1962, Madora, Lonnie, Sr., and John Phillips, signed a contract for
work to be done by Action Construction Corporation ("Action") on a house on the
land, granting the contractors a mechanic's lien on the land. Action foreclosed on the
lien, on the ground that Lonnie, Sr., Madora, and John had defaulted on the contract,
and then Action sold the 50 acres to Gulf Coast Investment Corporation in 1963. (3) In
1966, Gulf Coast Investment Corporation sold the land to Anthony Willy
("Anthony") and Kenneth Bing ("Kenneth"), less 10 acres previously conveyed to
Robert Phillips and his wife, Bernice Phillips on October 22, 1966. (4)

B. The 1969 litigation, 1974 settlement, and 1976 judgment

 In 1969, Kenneth and Anthony filed a petition in the district court of Brazoria
County for forcible entry and detainer, claiming that Madora and "Melvin" Phillips (5)
continued to stay on the land that Kenneth and Anthony owned, despite repeated
requests for them to leave. The petition was assigned cause number 51,593 and
prayed that Madora and "Melvin" be found guilty of forcible entry and detainer, that
the premises be restored to Kenneth and Anthony by writ of possession or other legal
writ, that Kenneth and Anthony recover reasonable rents for the unauthorized use of
the pasture and house on such properties by Madora and "Melvin," and for attorney's
fees. 

 Madora and Nelva Phillips filed a cross-claim to recover title and possession
of the land, alleging that they were owners in fee simple of the entire 50 acres. They
also asserted that Kenneth's and Anthony's title was based on a mechanic's lien
contract which was the result of material representation and fraud and (1) that Madora
signed the contract with poor lighting, without a chance to read it, while she was
functionally illiterate, and when the contents were misrepresented to her, and (2) that
her husband, Lonnie, Sr., signed it when he could not read or write (except to sign his
name) had suffered five strokes, was of feeble mind, was dying with terminal cancer,
was almost blind, and lacked the capacity to contract. (6) They also raised the defense
of usury. 

 On May 17, 1972, while the litigation was still pending, Madora Phillips, most
of her children, one of Gabel's children (Motley), and several other persons who are
apparently Phillips' family members, signed a deed purporting to convey the entire
50 acres to Lonnie Phillips, Jr. ("Lonnie"). The document did not include the names
or signatures of any of Alexander Jackson's eight children or their heirs, save Madora
and her progeny, nor was it signed by Robert Phillips, or his wife, Bernice, the
persons to whom 10 acres of the 50 had already been conveyed according to the deed
given to Anthony and Kenneth upon their purchase. (7) The deed also did not contain
the names or signatures of any of the heirs of "Johnny Phillips." (8) The May 19, 1972
deed made no reference to the 1963 mechanic's lien foreclosure on the land, the 1963
deed conveying the land to Gulf Coast Investment Corporation after its purchase of
the land, or the 1966 deed conveying the land to Anthony and Kenneth after their
purchase of the land. Instead, it referred back to the 1934 conveyance of the land to
John Phillips and Alexander Jackson.

 On November 11, 1974, after jury selection, the parties settled. The judgment
reflected that the parties were present and that Neil Caldwell was the attorney for
"Defendants Madora Phillips, Melvin Phillips (sic), and Lonnie Phillips." The
"Defendant . . . Lonnie Phillips" represented by Caldwell was Lonnie Phillips, Jr., (9)
who, according to the recitations in the judgment, was a defendant and cross-claimant
in the litigation. The parties agreed that Kenneth and Anthony would recover from
Madora, "Melvin," and Lonnie the "title and possession" of the 50 acres of land. The
agreement did not require the issuance of any deed to Anthony and Kenneth by any
Phillips family member. (10) However, Anthony and Willy agreed to convey to Lonnie,
by special warranty deed, 10 acres of the land, to be taken from the southeast portion
of the 50 acres and to include the "old homestead place." The parties agreed that
Kenneth and Anthony would survey the 10-acre tract and make copies of the survey
available to the parties to the judgment. Judgment was entered on May 19, 1976, in
accordance with the parties' agreement. Caldwell signed the agreed judgment on
behalf of Madora, "Melvin," and Lonnie, approving the judgment "as to form and
substance." No appeal was taken from this judgment.


C. The 1987 action and the 1990 post-judgment order

 In June 1987, Kenneth and Anthony filed a motion for post-judgment relief in
Cause No. 51,593, asserting that the surveys had been performed and that they had
attempted to complete the judgment by executing a special warranty deed to Lonnie
but that Lonnie "fail[ed] and refused to cooperate." Kenneth and Anthony prayed that
the court approve the 10-acre tract taken from the southwest portion (to include the
old homestead) and order a special warranty deed be executed to effect the judgment
of May 19, 1976. 

 Lonnie responded to the motion. The docket sheet indicates that a petition was
filed in intervention for clear title by a Jerome L. Ferrer. At a hearing held on
November 23, 1987, at which Lonnie and his counsel appeared, the court gave Lonnie
until December 23, 1987, to file objections and a brief in support thereof, allowing
Kenneth and Anthony to file a response brief within 30 days of Lonnie's filing. 
Lonnie filed a brief on December 14, 1987, Kenneth and Anthony filed their brief on
February 23, 1988, and Lonnie filed a supplemental answer and response to plaintiffs'
brief on February 29, 1988. The next entry appearing on the docket sheet was a
motion to withdraw as counsel on December 1989. A notice of submission was filed
on January 29, 1989, as well as a certificate of Lonnie's last known address. Lonnie's
attorney was allowed to withdraw on January 29, 1990. 

 On March 22, 1990, the trial court entered an order granting post-judgment
relief, finding that: 

 (1) judgment was entered on May 19, 1976, holding that Kenneth and
Anthony recover the 50 acres; and


 (2) that the judgment also provided that Lonnie Phillips, Jr. was to receive
a 10-acre tract out of the 50 acres, to include the homestead;


and ordering, adjudging, and decreeing that: 

 (1) a particular 10-acre tract, whose boundaries were specifically described
in the order, was identified as the 10-acre tract set aside to Lonnie
Phillips, Jr. in the May 19, 1976 judgment; and that


 (2) the balance of the 50-acre tract recovered by Kenneth Bing and Anthony
Willy in the May 19, 1976 judgment, was a particular 40.695 acre tract,
whose boundaries were specifically described in the order. 


The order denied any further relief requested by either party. 

D. The 2000 action

 1. The petition

 In May 2000, appellants filed a petition in the 23rd District Court of Brazoria
County, "pursuant to Civil Practice and Remedies Code §§ 16.025 and 16.026," (11)

against Betty Willy, alleged to be the widow and heir of Anthony Willy, Kimberly
Rae Bing Thompson, alleged to be the executor of the estate of Kenneth Bing, and
Kenneth Bing, Jr., also alleged to be an executor of the estate of Kenneth Bing. The
action was given the cause number 11869BH00. Lonnie was declared to be the
plaintiff with the actual cause of action, with Lance added "for the sole purpose of
proceeding in this action, in the event his father is unable to proceed with or continue
with the litigation process due to age and health concerns." The amended petition
was filed November 2000. It sought to quiet title in the 50 acres of land, claiming
that Lonnie had remained in peaceable and adverse possession of the land under color
of title since May 1972 and that his predecessors in interest had held the land in
adverse possession since 1914. It further alleged that Lonnie and his predecessor
held the land all under a claim of right, in good faith, and under duly recorded deeds
purporting to convey the land, i.e., the 1914 deed to Gabel and Larnie Phillips, the
1934 deed to John Phillips and Alexander Jackson, and the 1972 deed to Lonnie. The
petition also claimed that Lonnie had continuously cultivated, used, or enjoyed the
premises and had paid taxes on the entire 50 acres since at least 1972. The petition
acknowledged that there was a judgment relating to the property signed in May 1976
and that the defendants claimed right, title, estate or interest in the premises that was
adverse to Lonnie. But it charged that the claim or right was a result of fraud,
improper foreclosure procedures, and litigation in a court without jurisdiction, and
that therefore the defendants had no right, title or interest in the property. It further
claimed that, after the judgment, Lonnie and his family had repudiated the judgment
and Kenneth's and Anthony's rights and that such repudiation was made known to
Kenneth and Anthony by Lonnie's actions in response to the 1987 motion for post-judgment relief. 

 The petition also claimed that the date of the rendition of the adverse judgment 
preceded the petition by more than 25 years, (12) that Lonnie and his precedessors had
openly exercised dominion and control and asserted claim to the real property (paying
taxes before they became delinquent for more than 25 years before the
commencement of the action), and that the "persons holding the apparent record title
to the land" had not. Lonnie also claimed to have possessed, cultivated, and used the
property in actual, open, notorious, exclusive, hostile, and adverse possession since
the date of the order granting post-judgment relief to Anthony and Kenneth and that
such date preceded the commencement of the current action by more than ten years. (13) 
Lonnie prayed for judgment for the title of the property at issue, removing the cloud
on his title. 

 2. Appellants' motion for summary judgment

 On January 10, 2003, appellants filed a motion for summary judgment against
Bing and Willy, asserting that there were no disputed issues of material fact and that
they were entitled to judgment as a matter of law. Appellants cited the 10- and 25-year statutes of limitations provisions of the Texas Civil Practice and Remedies
Code (14) for actions to recover real property held in peaceable and adverse possession. 
Appellants argued that under section 16.029 of that same code, (15) they had established
prima facie evidence that title had passed to Lonnie, and therefore, Bing and Willy
were precluded from bringing an action for recovery of the land. Appellants asserted
that Lonnie or his family had been in possession of the land for at least 25 years, that
Lonnie had been in adverse possession of the land, under color of title, since May
1972, and that Lonnie had paid taxes since the entry of judgment in November 1974 (16)
that had given title or color of title to Anthony and Kenneth. Appellants contended
that the persons who held the apparent record title to the land had not exercised
dominion or paid taxes at any time or for one or more years during the 25 years
preceding the commencement of appellants' action, and that, therefore, under Texas
Civil Practice and Remedies Code section 16.030, (17) Lonnie had full title to the land. 
 Attached as evidence to the summary judgment motion was (1) an "Affidavit
of Use and Possession" signed by Lonnie, (2) an almost identical affidavit signed by
Lance, (3) copies of tax receipts to Lonnie Phillips purporting to be for the land in
question for various years from 1974 to 1994, (4) an affidavit from Lonnie attesting
that the receipts were true and correct copies and that he personally paid the taxes on
the land, and (5) an almost identical affidavit signed by Lance. Appellants prayed
that the trial court enter judgment awarding appellants title to the land. 

 Willy filed a response to appellants' motion for summary judgment, on January
27, 2003. In it, she stated that the 1976 judgment was an agreed judgment which had
divided the 50 acres of land so as to award a 10-acre portion of the tract to Lonnie,
and that the 1990 order had divided the property in accordance with the earlier
judgment. Willy argued that appellant had been a party to both actions, but had
appealed neither and that Anthony and Kenneth had continued to exercise control
over the property by attempting to sell it. Willy asserted that the first judgment had
made the parties tenants in common and that the subsequent order had made them
tenants at sufferance and therefore Lonnie was required to show actual notice of
repudiation of the tenancy. Willy contended that because appellants had not shown
in their motion for summary judgment that Lonnie had given actual notice as required
by law, summary judgment should be denied. Attached as evidence to Willy's
response was a copy of the May 19, 1976 judgment, the May 22, 1990 post-judgment
order, and a copy of a 1978 fax and contract between Anthony and Kenneth and
Fossel Realty to sell part of the property. 

 Bing also filed a response, on January 27, 2003, that (1) requested a
continuance, (2) asserted that the appellants failed to provide summary-judgment
evidence of their claims that Bing and Willy had no claim of right due to fraud,
improper foreclosure procedures, and litigation in a court without jurisdiction, and
(3) argued that the affidavits attached as summary-judgment evidence to appellant's
motion were defective, did not provide competent summary-judgment evidence, and
should not be considered. Bing also asserted that appellants had not offered any
competent summary-judgment evidence that established a chain of title to the
property or proved that the defendants had not exercised dominion over the property. 

 In a March 26, 2003, reply to the responses, appellants asserted that: (1) the
1976 judgment was a void judgment because various parties that he asserted were
necessary were not joined and the judgment was signed two years after the settlement
was reached; (2) the 1990 order was entered without notice to Lonnie, not in a timely
fashion, and was based on a dormant and void judgment; (3) Bing and Willy never
possessed title or color of title because the Phillipses had never executed a deed to
them as Lonnie claimed was required by the 1976 judgment; and (4) repudiation was
not required, and if required, could be inferred, or, alternatively, was established by
Lonnie's briefs and pleadings in response to the 1987 action. (18) Lonnie also claimed
that he had his name reentered on the tax rolls "after this suit," (19) grazed the land
beyond the 10-acre home place, allowed a friend to place a trailer on the land, and
fenced off the disputed acres. Appellants also disputed Bing's arguments that the
affidavits were defective and argued that neither defendant had raised a fact issue
regarding his possession of the property. Attached as evidence are some portions of
affidavits of heirship, a copy of the docket sheet of the 1969 case that included the
1987 post-judgment action, a copy of the 1976 judgment, a copy of portions of the
1990 post-judgment order, and a 1990 letter from Anthony and Kenneth's lawyer
providing the order to the court, explaining that it did not require the exchange of
deeds. (20) 

 3. Willy's motion for summary judgment

 On February 25, 2003, before the trial court ruled on appellants' motion for
summary judgment, Willy filed a motion for summary judgment. In it, she argued
that, because of the previous judgment and post-judgment order, the parties had been
tenants in common or tenants at sufferance, requiring Lonnie to show actual notice
of repudiation of the tenancy in order to establish adverse possession. She also
asserted that appellants "ha[d] not, and [could] not show actual notice [of repudiation]
to support their claim of adverse possession" and therefore, the claim should be
"denied and dismissed." The motion stated that attached as evidence were copies of
the 1976 judgment, the 1990 order, and the 1978 fax and contract to sell the property. 
However, it does not appear that the documents were actually attached to the motion
and only one document, the 1990 order, was later mailed in to be filed in support of
the motion for summary judgment. 

 4. Bing's motion for summary judgment

 On March 17, 2003, while both appellants' and Willy's motions for summary
judgment were still pending, Bing filed a motion for traditional and no-evidence
summary judgment. Under her traditional grounds, Bing asserted that: (1) there was
no notice of repudiation, therefore limitations did not begin to run, and appellants'
claim failed; and (2) res judicata barred appellants' claims, which Bing asserted had
already been litigated in the prior action, attaching as evidence, copies of the 1976
judgment and the 1990 order. (21) In the "no-evidence" portion of her motion for
summary judgment, Bing asserted that there was no evidence that Lonnie had given
actual notice of repudiation. 

 5. Appellants' responses to Willy's and Bing's motions for summary
judgment

 

 Appellant filed a response to both motions on April 4, 2003, asserting that he
was not a tenant at sufferance, and, therefore no notice of repudiation was required. 
Appellants specifically asserted that it was undisputed that after the 1974 judgment,
Lonnie had "entered the premises and fenced it off" and the issue of tenancy at
sufferance was "nullified." Appellants averred that there were exceptions to the
repudiation requirement, that Lonnie's possession of the property constituted
constructive notice of repudiation, and that his briefs and pleadings in the 1987 action
constituted repudiation. Appellants also contended that Lonnie had exercised
dominion and control, had re-entered his name on the tax rolls "after this suit," and
had grazed land beyond the "ten acre home." Appellants also argued that res judicata
did not apply because (1) the court in the prior suit was not one of proper jurisdiction,
(2) the parties were not identical, and (3) the suits did not involve the same cause of
action. Appellants attached as "additional summary judgment evidence" (22) (1) an
amended affidavit of use and possession signed by Lonnie, (2) an affidavit from
Lonnie regarding the payment of taxes, and (3) an affidavit by Lonnie stating that the
1976 judgment was not a consent judgment and that he was not provided notice of the
1990 judgment, though he had retained counsel. 

 Appellants also filed a supplemental response to Bing's motion for summary
judgment on October 15, 2003. In response to Bing's res judicata argument,
appellants asserted that res judicata did not apply because: (1) the first cause of action
was not litigated, but settled; (2) the parties were not the same and Lonnie was not a
party to the first action; and (3) the causes of action were not the same. In response
to the repudiation argument, appellants asserted that repudiation was not necessary
when a party has taken open, hostile, and notorious possession and acted in a manner
contrary to a tenant at sufferance. Lonnie also argued that he was not a party to the
original action and could not have consented to the judgment, that repudiation was
not necessary after partition when one takes possession after the partition, and that
there was no claim by the titleholder after 1987, not even in the will and inventory of
Kenneth Bing. Appellants attached as evidence copies of the petition in the 1969
action, the docket sheets in the 1969 and 1987 actions, a copy of the will and
inventory of Kenneth Bing and other documents related thereto. 

 6. The trial court's rulings on the motions for summary judgment

 On April 8, 2003, the trial court held a hearing on Willy's and appellants'
motions for summary judgment, and, by letter on April 14, 2003, the court indicated
that it was intending to deny appellants' motion and grant Willy's motion. (23) 

 Appellants then filed a motion for rehearing, with attachments, and later a
supplemental motion for hearing with more attachments, asking the court to
reconsider its ruling on Willy's and appellant's motions for summary judgment. (24) 
The trial court held a hearing on May 7, 2003, at which appellant offered additional
evidence, namely, a copy of the 1969 petition, a copy of Madora and Nelva's
supplemental answer to that petition, and a copy of the 1987 motion for post-judgment relief. 

 On May 12, 2003, the trial court entered a written order granting summary
judgment to Willy and denying summary judgment to appellants. The trial court also
"ordered, adjudged, and decreed" that Willy have her undivided interest in the 40.695
acres, in accordance with the original 1976 judgement, pursuant to the boundaries
established in the 1990 order, and that Lonnie have his undivided interest in the 10
acres pursuant to the boundaries established for it in the same order. Appellants
appealed the grant of this summary judgment, and the denial of their summary
judgment, to this Court, but the appeal was dismissed as interlocutory because
appellants' cause of action against Kenneth Bing, Jr. was still pending. (25) 

 On October 28, 2003, the trial court granted Bing's motion for summary
judgment, noted that it had previously denied appellants' motion for summary
judgment, and stated that it was again denying appellant's motion. The trial court
also "ordered, adjudged, and decreed" that Bing have her undivided interest in the
40.695 acres, (26) in accordance with the original 1976 judgement, pursuant to the
boundaries established in the 1990 order, and that Lonnie have his undivided interest
in the 10 acres pursuant to the boundaries established for it in the same order. 

 In November 2006, both Bing and Willy filed motions to sever the causes of
action by appellants against them. The trial court signed an order severing appellants'
causes of action against Willy and Bing into cause number 41452 on January 23,
2007, and appellants filed their notice of appeal on February 22, 2007. (27)
 

Standard of Review

 In nine points of error, appellants contend that the trial court erroneously
granted Willy's and Bing's motions for summary judgment and erroneously denied
appellants' motion for summary judgment. 

 We review a trial court's decision to grant or to deny a motion for summary
judgment de novo. See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253
S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for review of grant of summary
judgment and reviewing denied cross-motion for summary judgment under same
standard). Although a denial of summary judgment is not normally reviewable, we
may review such a denial when both parties move for summary judgment and the trial
court grants one motion and denies the other. Id. at 192 (citing Holmes v. Morales,
924 S.W.2d 920, 922 (Tex. 1996)). In our review of such cross-motions, we review
the summary judgment evidence presented by each party, determine all questions
presented, and render the judgment that the trial court should have rendered. Id.
(citing Comm'r Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)). 

 Under the traditional summary-judgment standard, the movant has the burden
to show that no genuine issues of material fact exist and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon, 690 S.W.2d at 548-49. A
defendant moving for summary judgment must conclusively negate at least one
essential element of each of the plaintiff's causes of action or conclusively establish
each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997). If the trial court's order granting summary judgment does not
specify the grounds upon which judgment was rendered, we must affirm the summary
judgment if any ground in the summary judgment motion is meritorious. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). 

 A no-evidence motion for summary judgment is essentially a directed verdict
granted before trial, to which we apply a legal-sufficiency standard of review. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). In general, a party
seeking a no-evidence summary judgment must assert that no evidence exists as to
one or more of the essential elements of the non-movant's claims on which the
non-movant would have the burden of proof at trial. Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st
Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no
evidence, the burden shifts to the non-movant to raise a fact issue on the challenged
elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment will be
sustained on appeal when (1) there is a complete absence of evidence of a vital fact,
(2) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered by the non-movant to prove a vital fact, (3) the evidence offered by
the non-movant to prove a vital fact is no more than a scintilla, or (4) the non-movant's evidence conclusively establishes the opposite of a vital fact. King Ranch,
118 S.W.3d at 751.

Discussion

 Appellants raise: (1) one point of error regarding the trial court's denial of
appellant's motion for summary judgment (point of error number 2); (28) (2) two points
of error complaining only of the trial court's grant of Willy's motion for summary
judgment (points of error numbers 3 and 4); (29) (3) two points of error complaining
only of trial court's grant of Bing's motion for summary judgment (points of error
numbers 8 and 9); (30) and (4) four points of error pertaining to the trial court's grants
of both Bing's and Willy's motions for summary judgment (points of error 1, 5, 6, and
7). (31)

 Most of appellants' various points of error are grounded in the following
underlying contentions:

(1) Appellants are not bound by either the 1976 judgment or the 1990
post-judgment order (which appellants collaterally attack);
therefore


(2) No tenancy in common or at sufferance was ever established; and
therefore


 (3) Appellants were not required to prove notice of repudiation in
order to establish that the necessary statute of limitations has run,
permitting appellants to claim the land by adverse possession; and


(4) If repudiation was required, it was proven, along with all other
required elements of adverse possession.


 We will consider these contentions in the context of the issues before us, the
law applicable to such issues, and the appropriate standards of review.

A. Adverse Possession 

 Under the applicable adverse possession statutes, a person must bring suit not
later than 10 years (Section 16.026) or 25 years (Section 16.027) "after the day the
cause of action accrues to recover real property held in peaceable and adverse
possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac.
& Rem. Code Ann. §§ 16.026(a), 16.027 (Vernon 2002). If an action for the
recovery of real property is barred by the statute of limitations, the person who holds
the property in peaceable and adverse possession has full title, precluding all claims. 
Id. at § 16.030(a). Any ouster by the record title holder after the limitations period
comes too late. Sterling v. Tarvin, 456 S.W.2d 529, 533 (Tex. Civ. App.--Fort
Worth 1970, writ ref'd n.r.e.).

 "Peaceable possession" means possession of real property that is continuous
and is not interrupted by an adverse suit to recover the property. Tex. Civ. Prac. &
Rem. Code Ann. § 16.021(3). "Adverse possession" is defined as "an actual and
visible appropriation of real property, commenced and continued under a claim of
right that is inconsistent with and is hostile to the claim of another person." Terrill
v. Tuckness, 985 S.W.2d 97, 107 (Tex. App.--San Antonio 1998, no pet.) (quoting
Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1)). Possession must be "actual,
visible, continuous, notorious, distinct, hostile, and of such as [sic] character as to
indicate unmistakably an assertion of a claim of exclusive ownership in the
occupant." Id. at 107-08 (quoting Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex.
1990)).

 The character of use required to establish adverse possession varies with the
nature of the land and with its adaptability to a particular use. Mohnke v. Greenwood,
915 S.W.2d 585, 593 (Tex. App.--Houston [14th Dist.] 1996, no writ); Vaughan v.
Anderson, 495 S.W.2d 327, 332 (Tex. Civ. App.--Texarkana 1973, writ ref'd n.r.e.). 
The adverse possession claimant need only use the land for some purpose to which
it is adaptable, and in the same manner an ordinary owner would use the property. 
Fuentes v. Garcia, 696 S.W.2d 482, 485 (Tex. App.--San Antonio 1985, writ ref'd
n.r.e.). Whether adverse possession has been established is ordinarily a question of
fact. Bywaters v. Gannon, 686 S.W.2d 593, 595 (Tex. 1985).

 An adverse possession claim requires proof of the following elements: (1)
peaceable possession; (2) actual possession of the disputed property; (3) under a
claim of right; (4) consistently and continuously for the duration of the statutory
period that is adverse and hostile to the claim of the owner. Glover v. Union Pac.
R.R. Co., 187 S.W.3d 201, 213 (Tex. App.--Texarkana 2006, pet. denied) (citing
Natural Gas Pipeline Co. v. Pool, 124 S.W.3d 188, 193-94 (Tex. 2003)). The
limitations period begins to run on the date the adverse possessor actually and visibly
appropriates the claimed land. Waddy v. City of Houston, 834 S.W.2d 97, 103 (Tex.
App.--Houston [1st Dist.] 1992, writ denied).

 1. Peaceable Possession 

 According to the 1974 judgment, Lonnie was a cross-plaintiff, along with
Madora and Nelva, in an action to quiet title in the land. Lonnie's claim to title of the
land was resolved by the 1976 consent judgment, agreed to by the parties, including
Lonnie, (32) recognizing title for Anthony and Kenneth, predecessors in interest to Bing
and Willy, in 40 acres of the 50-acre tract and title for Lonnie in 10 acres of the tract,
which included the portion containing the old homestead. Any claims of adverse
possession of the land by Lonnie or his family prior to May 19, 1976, were therefore
extinguished by this acknowledgment of Anthony and Kenneth's title. Additionally,
the entry of this judgment interrupted any running of limitations as the holding of this
land could not be "peaceable." 

 2. Actual Possession 

 In order for Lonnie to satisfy this element, he must have been seen on the land
in order to give notice to appellees that he was claiming a right to the entire 50 acres. 
Perkins v. McGehee, 133 S.W.3d 287, 292 (Tex. App.--Fort Worth 2004, no pet.). 
Certain acts can demonstrate actual and visible appropriation of real property,
including grazing cattle, building fences, and occupation of land. Parker v.
McGinnes, 842 S.W.2d 357, 360 (Tex. App.--Houston [1st Dist.] 1992, writ denied);
Wall v. Carrell, 894 S.W.2d 788, 800 (Tex. App.--Tyler 1994, writ denied); Mohnke
v. Greenwood, 915 S.W.2d 585, 593-94 (Tex. App.--Houston [14th Dist.] 1996, no
writ).

 Lonnie asserts that he had been in adverse possession of the property since
1974, either through his predecessors in interest or individually. In support of this,
Lonnie claims that he paid taxes on the property annually, grazed cattle on the land,
had family reunions on the land, and that he spends some weekends on the land. 

 The Supreme Court held in Rhodes v. Cahill that it was "well settled that,
where a party relies on naked possession alone as the foundation for his adverse
claim, it must be such an actual occupancy as the law recognizes as sufficient, if
persisted in for a long enough period of time, to cut off the true owner's right of
recovery." Rhodes, 802 S.W.2d at 64. There, Cahill, the adverse claimant, lived on
a 177-acre tract that was bought in 1933. Id. at 644. Adjoining that tract was a
smaller 15-acre tract, referred to by the Court as the "cedar tracts," that was not
separated from the 177-acre tract. A fence encircled the two combined tracts, and
there was no interior fence or other boundary separating the two tracts. Id. Cahill did
not live on the tract for which he was attempting to obtain by adverse possession. Id.
at 645.

 The Court noted that "neither . . . isolated commercial sale of cedar nor
selective clearing for grazing purposes is sufficient to show adverse possession . . .
as a matter of law." Secondly, even though the Cahills paid property taxes for 23
years on the "cedar tract," " this was insufficient to establish adverse possession as
a matter of law." Id. at 645-46. Additionally, Cahill asserted that goats and cattle
were grazed on the cedar tracts and they "occasionally repaired the fence, added net
wire and additionally barbed wire to it, and replaced some of the fence posts." Id. at
646. The Supreme Court held that neither the fence nor the grazing established
adverse possession as a matter of law, unless the cedar tracts were "designedly
enclosed for the Cahill's use." Id. The court noted that, under the applicable case
law, there are two kinds of fences: "casual fences" and fences that "designedly
enclose" an area. If the fence existed before the claimant took possession of the land
and the claimant fails to demonstrate the purpose for which it was erected, then the
fence is a "casual fence." Id. Repairing or maintaining a casual fence, even for the
express purpose of keeping the claimant's animals within the enclosed area, generally
does not change a casual fence into a designed enclosure. McDonnold v. Weinacht,
465 S.W.2d 136, 142-43 (Tex. 1971). A claimant may so change the character of a
casual fence that it becomes a designed enclosure, and evidence of such a substantial
modification is sufficient to support a jury finding of adverse possession. Butler v.
Hanson, 432 S.W.2d 559 (Tex. Civ. App.--El Paso), aff'd 455 S.W.2d 942 (Tex.
1970). 

 Lonnie asserts in his affidavit that "the property is fenced and has been fenced
continuously for at least the last 50 years." However, Lonnie claimed in a pleading
entitled "Plaintiff's Opposition to Defendant's Motion for Summary Judgment" that
he fenced the property off after the 1974 judgment. Aside from the statement in that
pleading, the record does not indicate who built the fence or for what purpose. 
Therefore, Lonnie has not established proof of a designedly enclosed fence. See
McDonnold, 465 S.W.2d at 141 (holding where purpose of fence could not be
determined, fence was "casual" rather than designedly enclosed even though claimant
maintained the fence.) See also Mohnke, 915 S.W.2d at 593 (holding where there was
no testimony as to purpose of fence's construction, claimants' evidence regarding use
of property failed to establish that fence was designed enclosure).

 Lonnie's other claims of occupancy also fail to establish actual and visible
appropriation of real property. Sporadic, irregular, and occasional use of land does
not satisfy the adverse possession statutes. Harlow v. Giles, 132 S.W.3d 641, 646
(Tex. App.--Eastland 2004, no writ). In addition, "[e]vidence of only occasional
visits on property is insufficient to establish an adverse claim." Wall, 894 S.W.2d at
800. Therefore, appellant's weekend visits to the property and the holding of an
occasional family reunion do not constitute actual and visible appropriation of the
property. 

 3. Claim of Right

 For purposes of adverse possession, a "'claim of right' means that the entry of
the claimant must be with the intent to claim the land as his own, to hold it for himself
and such must continue to be the nature of his possession." Myers v. Wright, 224
S.W.3d 466, 469 (Tex. App.--Dallas 2007, no pet.). Further, "[t]he intention of the
claimant to hold it for himself must be manifested by open and visible acts or
declarations showing purpose." DeArman v. Surls, 618 S.W.2d 88 (Tex. Civ.
App.--Tyler 1981, writ ref'd n.r.e.).

 In Orsborn v. Deep Rock Oil Company, the Texas Supreme Court held that
"[n]o matter how exclusive and hostile to the true owner the possession may be in
appearance, it cannot be adverse unless accompanied by the intent on the part of the
occupant to make it so. The naked possession unaccompanied with any claim of right
will never constitute a bar." 267 S.W.2d 781, 787 (Tex. 1954). Rather, the court held
that the claim of right "must be manifested by declaration or by open or visible act." 
Id. The claimant's testimony that "he and his father always claimed the disputed tract"
was held not to constitute evidence that would support a claim of adverse possession. 
Id. at 787-88. This testimony was dismissed as merely being about a mental process
or the expression of a mere opinion or conclusion. Id. at 787. 

 Similarly, appellant's assertion that "this property has been the family
homestead of my family for more than 50 years" is the expression of an opinion or
conclusion. Appellant states that his family has "continued to reside on the property
for more than 50 years," but, this claim, as discussed above, does not provide adequate
external circumstances to support that claim of right. See Tran v. Macha, 213 S.W.3d
913, 914 (Tex. 2006) (holding "there must be adverse possession, not just adverse
beliefs.").

 Furthermore, Lonnie's payment of taxes was not a visible appropriation of the
property as required by the adverse possession statutes. The payment of taxes is some
evidence of adverse possession, but it is insufficient to establish adverse possession
as a matter of law. Templeton v. Dreiss, 961 S.W.2d 645, 670 (Tex. App.--San
Antonio 1998, pet. denied); Dellana v. Walker, 866 S.W.2d 355, 361 (Tex.
App.--Austin 1993, pet. denied). 

 4. Consistent and Continuous Hostile Claim

 The term hostile in the context of adverse possession refers to whether the claim
is inconsistent with the rights of the true owner. The MBA v. McWhorter, 177 S.W.3d
465, 472 (Tex. App.--Houston [1st Dist.] 2005, no pet.). "The test for hostility is
whether the acts performed by this claimant on the land and the use made of the land
were of such a nature and character as to reasonably notify the true owner of the land
that a hostile claim was being asserted to the property." Id. In applying the hostile
element to a situation where grazing is the chief evidence of consistent and continuous
hostility, the Supreme Court in Orsborn held:

 It is settled that limitation title cannot be acquired by grazing unenclosed
land . . . When the use relied upon to support the statute is grazing, there
must be also at the same time sufficient enclosure, such as to give
evidence that the land was designedly enclosed and to show the assertion
of claim hostile to the true owner. The ordinary case for the acquisition
of title by adverse possession, when the use is grazing, is one in which
the person claiming title under the statute has built a fence or fences
enclosing the land and has maintained the enclosure and continuously
used the land for grazing during the statutory period. Such construction
of fences and use of the land for grazing afford evidence of a hostile
claim.

Orsborn, 267 S.W.2d at 785 (citations omitted).

 As previously noted, appellant has failed to demonstrate the purpose for which
fencing was erected, therefore, the fence is a "casual fence." Such a fence does not
afford evidence of a hostile claim.

 In light of our examination of the six adverse possession factors, we hold that
appellant did not establish adverse possession as a matter of law.

B. Repudiation 

 Appellant also claims that the trial court erred in determining that repudiation
was necessary in order for him to claim adverse possession. A party that holds over
after an adverse judgment has been rendered against it is merely a permissive tenant
or a tenant at sufferance. Tex-Wis Co. v. Johnson, 534 S.W.2d 895, 899 (Tex. 1976). 
Phillips has remained on the estate notwithstanding the 1976 judgment; therefore, he
is a tenant at sufferance. Before a tenant at sufferance can adversely possess the
property, the tenant must repudiate the tenancy. Id. Actual notice of repudiation is not
required. Id. Constructive notice of repudiation may be established by (1) long-continued possession under claim of ownership and (2) non-assertion of claim by the
titleholder. Id. at 901. "Constructive notice will be presumed where the adverse
occupancy and claim of title has been long continued, open, notorious, exclusive, and
inconsistent with the existence of title in others." Loeffler v. Lytle Indep. Sch. Dist.,
211 S.W.3d 331, 341 (Tex. App.--San Antonio 2006, pet. denied). 

 In determining whether possession of the claimed land is exclusive, all evidence
must be considered. La. Pac. Corp. v. Holmes, 94 S.W.3d 834, 838 (Tex. App.--San
Antonio 2002, pet. denied). While repudiation is often a fact question, when the
pertinent facts are undisputed, repudiation may be established as a matter of law. King
Ranch, Inc., 118 S.W.3d at 756. The Texas Supreme Court has stated that the number
of years required to establish sufficient long-continued use can vary and should be
determined on a case-by-case basis. Tex-Wis Co., 534 S.W.2d at 902. In the instant
case, the last judgment prohibiting Phillips from entering the property was granted on
May 22, 1990. The summary judgment claim was initiated in May 2000. 

 In Amador v. Berrospe, 961 S.W.2d 205 (Tex. App.--Houston [1st Dist.] 1996,
writ denied), a party claimed adverse possession against his cotenant. This court held
that to do so, the claimant must prove the additional element of "repudiation of title
or ouster by the cotenant" claimant. Id. at 208. In Amador, the claimant "maintained,
insured, and paid taxes on the property for fourteen years" after the event that created
the co-tenancy occurred, just as he had done prior to that event. Id. at 209. However,
since his actions post-occurrence were in conformity with his actions pre-occurrence,
those actions could not have put his cotenant on notice of an adverse claim. Id. Thus,
this court found the adverse possession claim to be without merit as a matter of law.

 Similarly, in Poenisch v. Quarnstrom, 361 S.W.2d 367 (Tex. 1962), the Texas
Supreme Court found no evidence of repudiation sufficient to start the running of the
statute of limitations. The court pointed out that it takes more to show repudiation
than "possession and payment of taxes on the property" which do not constitute the
assertion of an adverse right. Id. at 369; see also Todd v. Brunner, 365 S.W.2d 155,
160 (Tex. 1963) ("Possession, coupled with payment of taxes, is not notice to cotenant
of repudiation . . . cutting of timber is not . . . notice of repudiation").

 Finally, in Witcher v. Bennett, 120 S.W.3d 922 (Tex. App.--Texarkana 2003),
the court held that the grazing of livestock, building and maintenance of fences,
fertilization, harvesting of hay, construction of a pond, and the payment of taxes for
two years and nine months did not constitute long-continued possession. Id. at 926. 

 In light of these cases, Lonnie's acts of grazing cattle and paying taxes are not
sufficient notice of repudiation. Moreover, Lonnie's affidavit states that he has been
grazing cattle and paying taxes on the property for the last 50 years and going out to
the homeplace for a few weekends a month. These actions are in conformity with his
actions prior to the 1976 order and cannot establish repudiation. Poenisch, 361
S.W.2d at 369. 

C. Failure to Award Reimbursement

 Lonnie next argues that the trial court failed to reimburse him for taxes, repairs,
maintenance, and insurance premiums paid. However, this request for relief is not
found in Lonnie's first amended petition or in his motion for summary judgment. "[A]
trial court cannot grant summary judgment for a reason that the movant does not
present to the trial court in writing. Also . . . issues an appellate court may review are
those the movant actually presented to the trial court." Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 625 (Tex. 1996). Thus, the complaint is not properly before
this court for review. See Tex. R. App. P. 33.1 (setting forth grounds for preservation
of issues for appellate review).

D. Summary

 For the foregoing reasons, we hold that appellants failed to meet their summary
judgment burden by establishing that no genuine issue of material fact exists and that
they were entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c). 
Moreover, we hold that the trial court did not err in granting Bing and Willy's
traditional motion for summary judgment and Bing's no-evidence motion for summary
judgment because (1) Lonnie failed to show he was entitled to judgment as a matter
of law and failed to raise a fact issue on the challenged elements of adverse possession
and repudiation, and (2) Bing and Willy showed their entitlement to judgment as a
matter of law. Therefore, we overrule appellants' nine points of error.

Conclusion

 We affirm the judgment of the trial court.




 Tim Taft (33)

 Justice

 


Panel consists of Chief Justice Radack and Justices Sharp and Taft.
1. Appellants' brief styles this case so as to include Kenneth W. Bing, Jr., as an
appellee. Texas Rule of Appellate Procedure 3.1(c) defines an appellee as "a
party adverse to an appellant." Tex. R. App. P. 3.1(c). Unlike an appellant,
who must file a notice of appeal and identify himself or herself, an appellee
need not be definitively identified until the appellant's brief is filed. See Gray
v. Allen, 41 S.W.3d 330, 331 n.2 (Tex. App.--Fort Worth 2001, no pet.). An
appellee, however, must be a party to the trial court's final judgment and must
be someone against whom the appellant raises issues or points of error in the
appellant's brief. See id. Kenneth W. Bing, Jr. is not a party to the trial court's
final summary judgments and so cannot be an appellee. 
2. In our discussion of the summary judgments, we will detail what evidence the
trial court had properly before it in making its decisions, and we will limit our
review to such evidence. 
3. Action had assigned the note to Gulf Coast Investment Corporation in
September 1962. 
4. This portion of the land's history is taken from appellants' first amended
petition in the underlying action, filed in 2000. There is no documentation in
the record, apart from pleadings, to confirm these facts, but they are consistent
with pleadings filed by appellees at the trial court level and by pleadings filed
by Kenneth and Anthony in prior litigation regarding this land.


 Appellants also claimed that the sale of the property to Gulf Coast Investment
Corporation, and the later sale to Anthony and Kenneth, attorneys who
represented Action Construction Corporation, were "a series of fraudulent
transactions." Appellants asserted that Anthony and Kenneth were "aware of
or part of a conspiracy of fraud regarding the land and were not bonafide
purchasers." However, no evidence appears in the record regarding these
accusations and no finding was made by any factfinder regarding such
accusations.
5. The petition named "Melvin Phillips" as a defendant, but the answer and cross-claim was made by "Nelva" Phillips. Nelva Phillips was one of the sons of
Lonnie Phillips. 
6. It appears that some portion of the Defendants' First Amended Answer, from
which this information is taken, is missing, as the final page begins in the
middle of a word that does not appear on the preceding portion of the
document, but we have gleaned what we can from it.
7. A "Robert Phillips" was listed in the body of the purported deed, but the
signature line for Robert Phillips is blank. There is no mention of Bernice
Phillips in the document.
8. Johnny Phillips died intestate in 1965, leaving two heirs, Mamie Phillips and
Johnny Phillips. Jr. 
9. Lonnie Phillips, Sr. died in April 1963, before the inception of the 1969
litigation. In a sworn affidavit filed in support of his summary judgment in the
2000 litigation, Lonnie (Jr.) attested to the fact that Caldwell represented him
in the 1969 litigation. However, he denied entering into a consent judgment,
stating that the judge had told him during a recess that "all parties necessary
had not signed;" that "he had to obtain signatures" from certain relatives; and
that "[his] attorney, Neil Caldwell," had told him that if those relatives did not
sign, the action would have to "start all over." Lonnie asserted that he had
"never signed a judgment, never took the witness stand, and the only person
questioned at all was [his] mother, Madora." 
10. Paragraphs that would have required Lonnie to obtain title for the property
from apparent heirs of Alexander Jackson "to whatever extent is possible under
the circumstances" and then to convey any and all of his interest "that he may
have or obtain" in and to the land to Kenneth and Anthony were struck out. 
11. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025, 16.026 (Vernon 2002)
(providing for five- and 10-year statute of limitations, respectively, for actions
to recover property held in peaceable and adverse possession under certain
conditions).

12. Lonnie utilized the date of the agreement, November 13, 1974, in this
calculation, rather than the date of the actual signing of the judgment, which
was May 19, 1976. 
13. The petition apparently calculates this time frame as commencing in 1987
("since the entry of the judgment . . . in 1987"). However, the order was
actually signed May 22, 1990. 
14. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.026, 16.027 (Vernon 2002).
15. See Tex. Civ. Prac. & Rem. Code Ann. § 16.029 (Vernon 2002) (discussing
prima facie evidence that title has passed from person holding apparent record
title to opposing party).
16. This apparently refers to the judgment entered on May 19, 1976. 
17. Texas Civil Practice and Remedies Code section 16.030(a) provides that "[i]f
an action for the recovery of real property is barred under this chapter, the
person who holds the property in peaceable and adverse possession has full
title, precluding all claims." Tex. Civ. Prac. & Rem. Code Ann. § 16.030
(Vernon 2002).
18. None of these pleadings or briefs appears in the record on appeal.
19. The reply does not specify which suit, but the documents on appeal suggest
that this action was done in 1974.
20. These documents were filed less than 21 days before the April 8 hearing on
appellant's motion. The record does not reflect any request, or grant, of leave
of court to file these documents as summary judgment evidence. See Tex. R.
Civ. P. 166a(c).
21. Bing also attached as evidence a copy of the 1978 fax and contract regarding
the listing of the land for sale, but this exhibit is not referred-to in her motion
for summary judgment. 
22. These documents were filed less than seven days before the hearing on Willy's
motion for summary judgment and less than 21 days before the hearing on
appellants' motion for summary judgment. The record does not reflect any
request, or grant, of leave of court to file these late-filed documents as
summary judgment evidence. See Tex. R. Civ. P. 166a(c).
23. Bing's counsel was present for this hearing, but because it had been less than
21 days from appellants' receipt of Bing's motion for summary judgment, and
appellants raised an objection on this basis, the trial court did not hear Bing's
motion. See Tex. R. Civ. P. 166a(c). 
24. Appellants also filed a motion objecting to the assigned judge that was denied
as untimely. 
25. See Phillips v. Willy, No. 01-03-00711-CV, 2004 WL 911795, at *2 (Tex. App.
--Houston [1st Dist.], April 29, 2004, no pet.) (memo op.) 
26. This is the same property awarded to Willy. 
27. Appellants filed their February 22, 2007 notice of appeal in the original cause
number (11869BH00), but this court deemed it to have been filed in the
severed cause number (41452). See Verburgt v. Dorner, 959 S.W.2d 615, 616
(Tex. 1997) ("We have repeatedly held that a court of appeals has jurisdiction
over any appeal in which the appellant files an instrument in a bona fide
attempt to invoke the appellate court's jurisdiction."); City of San Antonio v.
Rodriguez, 828 S.W.2d 417, 418 (Tex. 1992) (holding that notice of appeal
reciting correct style but incorrect cause number--one that was totally
unrelated to cause from which appeal was desired--was bona fide attempt to
invoke appellate jurisdiction, when no confusion could have arisen due to
erroneous cause number). 

28. Point of error number two reads, "The Court erred in failing to grant
Appellant's [sic] motion for summary judgment."
29. Point of error number three reads, "The Court erred in granting Appellees'
[sic], Willy [sic], Motion for Summary Judgment under the theory of consent
or agreed judgment by a party, as Appellant was not a party to the original
proceeding.


 Point of error number four reads, "The Court erred in granting Appellee's [sic],
Willy [sic], Motion for Summary Judgment because the requisite consent and
other contingencies to judgment was lacking to be a valid judgment."
30. Point of error number eight reads, "The trial court erred in granting Summary
Judgment for Appellee, Bing [,] on the theory of res judicata."


 Point of error number nine reads, "The trial court erred in granting Appellee's
[Bing's] No Evidence Motion for Summary Judgment."
31. Point of error number one reads, "The Court Erred in Premising the Grant of
Summary Judgment to Appellees on a Void Transfer of Land through a number
of procedural errors."


 Point of error number five reads, "The Court erred in determining that
repudiation was necessary in order for Appellant to claim adverse possession."


 Point of error number six reads, "The Court erred in determining that there had
been no repudiation, if it deemed the same necessary."


 Point of error number seven reads, "The trial court committed an abuse of
discretion in failing to consider equitable principles in relation to the
Appellant's claims of adverse possession."
32. The fact that the judgment was signed by Lonnie's attorney, rather than Lonnie
personally, does not make the judgment void, as alleged by appellant. 
Presumably, Lonnie's attorney was acting as an agent of Lonnie and was
authorized to sign the judgment on his behalf.
33. Justice Tim Taft, who retired from the First Court of Appeals effective June 1,
2009, continues to sit by assignment for the disposition of this case, which was
submitted on June 23, 2009.